```
92  233
94  157
92  233
116  217
```

## JOHN W. STUYVESANT v. CALVIN WILCOX.

[See *ante*, 228.]

*Assault—Trespasser—Damages.*

1. In a civil suit for assault and battery brought by a plaintiff who had conveyed his farm to the defendant in consideration of a life-support agreed to be furnished by the grantee, which

deed the plaintiff was attempting to set aside, and to that end had left the premises where he had been living with the defendant under such agreement, but returned to procure his personal effects, among which was a plane, of which he had secured peaceable possession, and which assault was committed, if at all, while the parties were struggling over the possession of the plane, the defendant claiming that it belonged to him under the arrangement between the parties, which the plaintiff denied, it is competent for the plaintiff, as bearing upon that issue, to go into said arrangement, and to show that the title to the personal property never passed to the defendant.

2. This Court has never held that a defendant should be compelled to pay "smart money" as exemplary damages, or any damages, by way of punishment merely.

3. It is reversible error so to charge a jury in a suit for assault and battery as to give them to understand that they had the right, if they found that the defendant had acted wantonly and maliciously, to punish him in their discretion, and make him "smart" for his illegal, wanton, and malicious conduct.

Error to Van Buren. (Buck, J.) Argued May 13, 1892. Decided June 10, 1892.

Trespass. Defendant brings error. Reversed. The facts are stated in the opinion.

*L. A. Tabor* and *Boudeman & Adams,* for appellant.

*E. R. Annable* and *Osborn & Mills,* for plaintiff, contended:

1. The law as announced by the court, regarding the right of plaintiff peaceably to re-enter and take possession of his personal property, was correct, in the light of the authorities; citing Cooley, Torts, 50–52; *Richardson v. Anthony,* 12 Vt. 273; *Yale v. Seely,* 15 Id. 221; *Hodgeden v. Hubbard,* 18 Id. 504; *Johnson v. Perry,* 54 Id. 459; *Bowman v. Brown,* 55 Id. 184; *Johnson v. Perry,* 56 Id. 704; *Sterling v. Warden,* 51 N. H. 217.

2. It made no sort of difference what name the judge applied to the additional sum plaintiff was entitled to recover above actual compensation; citing *Ross v. Leggett,* 61 Mich. 445.

LONG, J. This is an action for assault and battery.

Defendant is the son-in-law of the plaintiff. The plaintiff was the owner of 80 acres of land in the township of Decatur, Van Buren county. He was a man 79 years of age. On February 4, 1890, he and his wife executed to the defendant a deed of the farm, and took back from the defendant an instrument in the nature of a mortgage, to secure to the plaintiff and his wife their support during the term of their natural lives. At the time of the making of this deed plaintiff was possessed of some considerable personal property, and when he and his wife went to live with defendant they took their household effects and other articles of personalty with them. Over this some controversy seems to have arisen, the defendant claiming that in the arrangement the title to the personal property was made over to him as well as the title to the farm. Plaintiff held defendant's note, and some difficulty also arose in reference to that; the plaintiff claiming that defendant surreptitiously took the note from his possession, after he and his wife went to live with defendant, and refused to surrender it. In April following this transfer, plaintiff and his wife returned from a visit to their son, and advised the defendant that they had come to take their personal effects, as they had concluded not to reside longer with him. They were accompanied by their son and a man by the name of Youngblood. They went into the house, and the defendant refused to allow the plaintiff to take away any of the property, except his and his wife's clothing, claiming that it had been given him by plaintiff for his and his wife's support, and that, having left his house without just cause and against his wishes, the plaintiff was not entitled to the personal property. The plaintiff went out of the house into the barn and got a plane, which was a part of the property taken to the premises by him, and handed it to Mr. Youngblood. Defendant came out and

told Youngblood that he should take nothing away from there. He stepped up and took hold of the plane in Youngblood's hands, when the plaintiff also took hold of the plane. Defendant's son was then called by his father to come to his assistance, and he also took hold of the plane with defendant. The four were pulling upon the plane, plaintiff being assisted by Youngblood, and defendant by his son. The plane was a small carpenter's plane, about one foot in length and two inches wide. The claim of the plaintiff is that, during this *melee*, the defendant struck him in the right side with his fist, knocking him to the ground. From there he was taken home by his son. A physician was called, and he testified that he found the plaintiff suffering considerable pain, and he discovered a flushed redness on the side where plaintiff claims to have been hurt. Plaintiff claims that he kept his bed two or three weeks after the injury, and that at the time of the trial he was still suffering pain by reason of this blow.

On the trial plaintiff had verdict and judgment for $1,200.

Defendant brings error. Some 60 errors are assigned.

On the trial the plaintiff was permitted to introduce testimony tending to show that the plane over which the controversy was had was his property. The evidence introduced was the deed of conveyance, the mortgage taken back, and other writings made between the parties, as well as the testimony of the plaintiff that he never sold to the defendant the personal property, including this plane. The defendant contended that the title to the plane should not be permitted to be shown, and could not be inquired into; that, being in peaceable possession of the plane, and it being on his premises, the plaintiff was a trespasser, whether he was the actual owner or not, in entering upon the premises, and

attempting to remove it against defendant's objection and protest. Defendant also contended that he was the actual owner of the plane. This testimony introduced by the plaintiff was all under defendant's objection, and many of the assignments of error are based upon the rulings of the trial court in admitting it.

In his general charge the court directed the jury as follows:

"Under the undisputed evidence, at the time of the acts complained of in this case defendant was upon his own premises, and whatever took place there was brought about by the plaintiff going upon defendant's premises; that is, gentlemen, whatever occurred at the time referred to happened on defendant's own premises. Whether the defendant was justified in doing what was done on that occasion in defense of his possession of his property, or whether what he did there was unjustifiable, depends upon the facts as you may find them to be. Whether the plaintiff or the defendant owned the personal property in controversy depends upon the bargain made between the parties in relation to the support of the plaintiff and his wife by the defendant. If you find that all the terms of that contract were included in the papers introduced in evidence, and that there was no bargain between the parties that the defendant was to have the personal property in question, and further find that there was never any gift or conveyance of this personal property from the plaintiff to the defendant, then the plaintiff would have a lawful right to go upon the premises of the defendant, and take away his (plaintiff's) property, if he could do so without a breach of the peace. He would not be a trespasser in going on such premises, even against the will of the defendant; and if you find that the plaintiff went onto these premises to take away his own property, and that he took an article of such property, namely, the plane referred to, temporarily into his possession, and while endeavoring to carry it away he was assaulted and beaten by the defendant, then your verdict should be for the plaintiff. If, on the contrary, you find that the plaintiff and his wife turned over to the defendant all of their personal property as part of the consideration for their support, and that

among the other things turned over to the defendant was the plane in question, and that while defendant was in possession of said plane plaintiff came upon defendant's premises to take it away, and that defendant defended his possession of his property with only so much force as was necessary to retain the possession of his own property, then any injury the plaintiff may have received would not be the fault of the defendant, and you should find a verdict for the defendant. And I give you in this connection the defendant's second request, as modified, as follows:

" ' If you find that the plaintiff, with two other men, came upon defendant's premises, without first asking permission of the defendant to so come there, and without defendant's inviting them there, and openly declared that they had come for the purpose of conveying away certain property there in the peaceable possession of the defendant, which personal property the defendant owned and claimed as his own, then the plaintiff was a trespasser from the time he first came upon the premises.'

" Also defendant's third request:

" ' If you find that the plaintiff, with his son Azariah and another man, by the name of Youngblood, came upon defendant's premises without permission or consent of the defendant, and then declared that they came to carry away certain personal property then in the peaceable possession of the defendant, and which defendant owned and claimed to own, and, while so attempting to carry away such property by force, plaintiff was injured in consequence of defendant's resistence only, then plaintiff could not recover in this action.'

" That is, gentlemen, the plaintiff cannot recover if you find the facts to be as stated in these requests given, unless the defendant used more force than was necessary to protect himself in the possession of his own property."

The court was not in error in admitting this testimony, or in the charge given upon the subject of the ownership of the plane. Under the claim made, it became an important consideration to determine in whom the title of the plane rested; and, to show this, the plaintiff had a right to go into the arrangement between the parties under which he went to live with defendant upon his premises, and to show that the title to the personal

property never passed to the defendant. Plaintiff's testimony showed that the plane was his. He was not a trespasser in entering upon the premises on that occasion. His home was there under the agreement of the parties, and, if his testimony be true, he was the sole owner of the plane. He had taken it into his possession that morning, and was about to take it away, as he had the right. He was not interfering with defendant's rights in so doing. [He had the right, if he owned it, to take it wherever he could find it, subordinate to the preservation of the public peace.] He would have no right to commit a breach of the peace in order, even, to recapture his property from a wrong-doer,—one whose possession was tortious. But it is a rule well settled that one has such a right in personal property that he may recapture it and take it into his own possession whenever and wherever he may peaceably do so. Cooley, Torts, 50, 51, and cases there cited.

An assignment of error is also based upon that portion of the charge relative to the measure of damages. After the court had directed the attention of the jury to the claim of actual damages, and that, if the plaintiff was entitled to recover, it might be nominal damages merely, if the defendant was the owner of the plane, and the plaintiff was a trespasser in attempting to take it away, and the defendant used more force than was necessary to protect his property, or the jury, under such circumstances, might give him his actual damages suffered, the court then directed the jury:

"If, however, you should find that the plaintiff was the owner of the plane, and was trying to remove it from defendant's premises peaceably, and that while so doing defendant assaulted him, and struck him a violent blow, willfully, wantonly, or maliciously, then you would be at liberty to award the plaintiff, not only his actual damages as before described, but also an additional sum

for what is termed 'exemplary damages,' 'punitory damages,' or 'smart money.' These damages are awarded as compensation to the plaintiff, and may include, in a case of this kind, some of the elements of actual damages, namely, physical pain and suffering; and they also include mental suffering,—the mortification growing out of an assault; the mortification of being struck a blow; the sorrow and mental anguish growing out of physical pain and suffering; and these or any other circumstances tending to plaintiff's discomfort may be considered by the jury in assessing exemplary damages; and upon this question I give you the plaintiff's second request as modified:

"'The jury are further instructed that if they find that defendant assaulted the plaintiff, as charged, and that said assault and battery was unprovoked by the plaintiff, and was maliciously and willfully and wantonly committed on the plaintiff, and the plaintiff was seriously injured and damaged thereby, then the jury, in finding the amount of the plaintiff's damages, are not confined to the amount of actual damages proven, but they may give him in addition thereto such exemplary damages or smart money as in their judgment will be just and proper, in view of all the facts and circumstances proved on the trial.'

"I also give you the plaintiff's third request:

"'In an action of assault and battery, the insult and indignity inflicted upon a person by giving him a blow with anger and rudeness constitutes an element of damages; and in this case, if the jury believe from the evidence that the defendant committed an assault, as charged, and did willfully and wantonly, then, in assessing damages, you may consider, as an aggravation of the wrong, the mental suffering and mortification of the feelings of the plaintiff arising from the insult and indignity of the defendant's blow.'"

The defendant complains of this portion of the charge because the court used the words "smart money;" that this was tantamount to an instruction that they might punish the defendant in dollars and cents, as well as award to the plaintiff his damages. We must take this charge as a whole on this question of damages, and from it determine if it bears the construction contended for. The whole of the charge relating to exemplary damages is given above. It was held in *Ross v. Leggett,* 61 Mich. 445, that,—

"It is of little consequence by what name the damages given are called, providing the case is one involving that class of injuries for which the plaintiff is entitled to recover. They may be called 'exemplary,' 'punitory,' 'vindictive,' 'compensatory,' or 'added' damages. The important question always is, in every case, was the character of the wrong suffered or injury sustained such as may be lawfully atoned for or compensated in money?"

But this Court has never held that one should be compelled to pay "smart money" as exemplary damages, or any damages by way of punishment merely. Damages to be awarded can never exceed what shall compensate for the injury done. Compensation to the plaintiff is the purpose in view, and any instruction which may lead the jury to suppose that they have the right to go beyond that, and that they may punish the defendant by compelling him to pay "smart money;" is erroneous. The court did, indeed, charge the jury that "these damages are awarded as compensation to the plaintiff;" but nowhere in the charge did the court instruct the jury that all that plaintiff could claim was the amount which should compensate him for the wrongs he had suffered; and, under the charge as given, the jury might well have understood that they had the right, if they found that the defendant had acted wantonly and maliciously, to punish the defendant in their discretion, and make him "smart" for his illegal, wanton, and malicious conduct. The verdict is $1,200. It is a large sum, but it is not within our province to disturb it for that reason; but we should take it into consideration as bearing upon the question whether the jury may or may not have awarded damages by way of punishment. In *Mooney v. Kennett,* 19 Mo. 551, the use of the words "smart money," as applied to exemplary damages, was held erroneous. The rule laid down by this Court in regard to exemplary

92 MICH—1s.

damages is harsh enough in many instances, and quite often there is no doubt that the jury, left without any more fixed and definite rule, have visited upon the wrong-doer an amount of damages much beyond the injury suffered, or that which would more than compensate for all the injury done. The rule should not be extended. No rule can be laid down properly measuring or limiting the damages allowable in cases where exemplary damages may be recovered, except, as has been said, "they must not be oppressive, or such as shock the sense of fair-minded men;" but the jury must understand in all cases that they are not justified in going beyond an amount that shall fairly compensate the party entitled to them.

We think the charge open to the objection made. We need not discuss the other errors claimed.

Since the trial in the court below the plaintiff has departed this life, and his death was suggested of record. The cause of action is one which by the statute survives.

The verdict and judgment must be reversed, with costs, and a new trial ordered, which may be prosecuted in the name of the executor or administrator.

MORSE, C. J., McGRATH and MONTGOMERY, JJ., concurred. GRANT, J., did not sit.