JAMES A. RANDALL v. THE EVENING NEWS ASSOCIATION.

[See 79 Mich. 266.]

*Libel and slander—Reputed wealth of defendant—Corporations—*
*Bribery—Evidence.*

1. Evidence of the reputed wealth of the defendant in a libel suit has been held competent upon the *sole* ground that such reputation is an element of social rank and influence, and may therefore tend to show the extent of the injury suffered (citing *Brown v. Barnes*, 39 Mich. 214; *Farrand v. Aldrich*, 85 Id. 593); but the jury should be instructed to consider such evidence only in its bearing upon the *actual* damages which the plaintiff has sustained, and that the wealth of the defendant is, of itself, no element of damage.[1]

2. Evidence of the reputed wealth of a defendant corporation in a suit for libel is inadmissible.

3. A corporation cannot be held liable for the malice of one of its stockholders towards a person, unless it be shown that such stockholder inspired or counseled the corporate act complained of.[2]

4. To give entertainments for the purpose of unduly influencing legislation is wholly bad in morals, but does not constitute the crime of bribery.

5. It is for the jury to determine the truth or falsity of a charge that the plaintiff in a libel suit gave entertainments for the purpose of unduly influencing legislation, and for the making of which the suit is brought, and a finding of the truth of the charge is a complete defense to the action.

6. A defendant, in a suit for libel for charging the plaintiff with securing the passage of a bill by bribery while a member of the Legislature, cannot show specific acts of bribery committed by the plaintiff at different political gatherings prior to his nomination and election, no notice of such intention having been given.

[1] See *Ellis v. Whitehead*, 95 Mich. 105, holding that the business standing of the defendant in a slander suit may be shown to prove the influence his word would have in the community, but that the jury should be cautioned against allowing such evidence to swell the damages on its own account.

[2] See *Wachsmuth v. Bank*, 96 Mich. 427.

7. Evidence of the reputation of the Legislature, or of individual members, except the plaintiff, as to honesty and integrity, is inadmissible.

8. Evidence of statements made by the plaintiff as to his purpose in being elected to the Legislature, his connection with the bill the passage of which he is charged with having secured by bribery, his reputation while there, his entertainments, his keeping "open house," whether or not the members visited it and partook of his hospitality, and whether this was done for the purpose of improperly influencing their action and votes, is admissible.

9. Evidence that other politicians are guilty of corrupt practices which tend to thwart the will of the people, and are dangerous to good government, is not admissible in behalf of a plaintiff in a suit for libel for charging him with the same misconduct.

Error to Wayne. (Hosmer, J.) Argued June 6 and 7, 1893. Decided October 13, 1893.

Case for libel. Defendant brings error. Reversed. The facts are stated in the opinion, and in 79 Mich. 266.

*Dickinson, Thurber & Stevenson,* for appellant.

*John Atkinson* (*Levi T. Griffin* and *Otto Kirchner*, of counsel), for plaintiff, contended:

1. If the manager of a corporation makes it an instrument of his hate, its acts in carrying out his will become qualified by his motives, and his malice becomes its malice; citing Bish. Non-Cont. Law, § 722; *Railroad Co. v. Quigley,* 21 How. 202; *Machine Co. v. Souder,* 58 Ga. 64; *Association v. McDermott,* 44 N. J. Law, 430; *Maynard v. Insurance Co.,* 34 Cal. 48; *Whitfield v. Railway Co.,* El. B. & E. 115; *Vinas v. Insurance Co.,* 27 La. Ann. 367; *Bacon v. Railroad Co.,* 55 Mich. 224.

GRANT, J. The libelous article upon which this suit is founded is given in full in 79 Mich. 266. The case was then brought to this Court upon demurrer to the declaration. After that decision, which held that the article was libelous, defendant pleaded the general issue, with notice in justification that the article, in its fair and ordinary.

signification, was true. Plaintiff recovered verdict and judgment for $11,000. Ninety-eight assignments of error are alleged.

1. Plaintiff introduced evidence which, it is claimed, tended to show the reputed wealth of the defendant corporation. It is insisted by the defendant that, even if such evidence were competent, that which was introduced did not tend to establish such reputation. It is unnecessary, however, to determine this question. Evidence of this character has been held competent by this Court upon the sole ground that the defendant's reputation in this respect is an element of social rank and influence, and may therefore tend to show the extent of the injury suffered. *Brown v. Barnes,* 39 Mich. 214; *Farrand v. Aldrich,* 85 Id. 593. These cases recognize the danger of opening the door to this inquiry, and therefore hold that it is the duty of the trial court to carefully caution and instruct the jury that they can consider such evidence only in its bearing upon the actual damages which the plaintiff has sustained, and that the wealth of the defendant is, of itself, no element of damage. Some of the courts which have approved the rule have evidently looked upon it with disfavor, and shown a disposition to restrict if not altogether to reject it. *Case v. Marks,* 20 Conn. 248; *Watson v. Watson,* 53 Mich. 175. In the latter case Chief Justice COOLEY has ably discussed the subject and the authorities. After citing *Railway Co. v. Smith,* 57 Ill. 517, which holds that, in case of two joint defendants, such evidence must be rejected, he says:

"This difficulty in the application of the rule ought to give very satisfactory evidence of its unsoundness; for the rule, if founded in justice and reason, ought to be, and would be, as applicable in one case as another. The plaintiff's injury is no greater and no less because two persons united in committing it, and the measure of his redress ought not to depend on a circumstance unimportant to the injury."

The improper use which may be made of such evidence by distinguished and learned counsel, in the heat of an important trial, is well illustrated by the following excerpts from the closing arguments of plaintiff's counsel:

"The defendant in this case is a corporation. It has no soul, it has no body. It is simply a money-making machine, to distribute money at the rate of $100,000 a year to James E. Scripps and his associates. But there are souls behind it, and the law says that it must pay for their malice and their hate."

"Mr. Randall asks you to vindicate him, not by a mere verdict of guilty; you must speak in thunder tones; you should speak emphatically; you should give such damages that your verdict will resound from one end of the State to the other, that those who have drunk in the poison emanating from this koproptutrometer against Mr. Randall may know that a jury of his fellow-citizens have said that James A. Randall has been unjustly accused. *You talk about $10,000, $15,000, or $25,000? That would not equal three months of the earnings of this sheet. Wont you make it $50,000, $75,000, or .$100,000? The News can afford to have a libel suit every month for $25,000, for the sake of the advertising in it.* This jury must strike it a fatal blow; and, if you want to make these gentlemen feel the sting of your judgment, touch their money bag."

It needs no argument to show that this was an appeal to the jury to measure their verdict, not by the actual damages the plaintiff had sustained, but by the ability of the defendant to pay. The court neither checked this language, nor expressly instructed the jury as to the purpose for which the evidence was admitted and the consideration they should give it. Had the defendant been an individual, the judgment should be set aside for this error alone.

But the important question is whether the evidence was competent at all in this case. We are cited to no authority, nor have we been able to find any, which holds that in a libel suit the actual or reputed wealth of the corporation defendant is admissible. An individual is a real entity,

seen, known, and felt.   He possesses social rank and influence in the community where he is known, measured by his education, his known character, his position among his fellows, and, to some extent perhaps, his reputed wealth. His libelous words will sting and injure in proportion to his rank and influence.   But a corporation has no social. rank or social influence to be augmented by its wealth or diminished by its poverty.   It is not a member of society. Its libelous utterances will sting and injure according to the extent of its circulation, the character of the paper published, as it is known by its publications, and the character of the party assailed.   A newspaper published by a corporation which is reputed to pay no dividends may have as extensive a circulation as one published by a corporation which is reputed to pay large dividends.   So, one reputed to be worth $50,000 may have as extensive a circulation as another reputed to be worth $500,000. Upon what principle can it be said that a libelous article by one is less injurious than one published by the other? It will not be contended that, without evidence. of wealth, actual or reputed, the evidence will not be sufficient to enable the jury fully to compensate the plaintiff for the actual damages. he has sustained.   We therefore see no reason or justice in extending this rule to corporations, and thus giving an opportunity for appeals to the sympathy and prejudice of juries to render verdicts not according to the actual damage sustained, but to the ability of the defendant to pay.   If there. is no reason or justice in the proposition, it cannot be the law.

2. Mr. James E. Scripps was placed upon the stand by the plaintiff, and subjected to. a long examination by his counsel as to the history of the Evening News, the organization of the defendant company, and his relations with the plaintiff, extending over a series of years long prior to the publication complained of.   The evident purpose of this

was to show malice on the part of Mr. Scripps, and to attribute that malice to the defendant. The evidence was incompetent. Mr. Scripps was not shown to have instigated or to have been in any manner connected with the publication of the article. He was neither manager nor editor, and his sole connection at that time with the defendant was that of a stockholder. He went to Europe in the summer of 1887, where he remained traveling until the fall of 1889, several months after the publication, except that he was home for a few days in the fall of 1888. He knew nothing of the publication of the article at the time, and testified that he had no recollection of ever seeing it until after his return, and there is no evidence that he did see it. Neither was there any evidence that he had ever given any instructions to any one connected with the paper to assail Mr. Randall.

The only testimony which, by any possibility, can be construed into such an instruction, is that of Mr. May and Mr. McLeod, the former a witness for plaintiff, the latter a witness for defendant. But there is no testimony tending to show that either of the conversations which these witnesses say they had with Mr. Scripps was communicated to Mr. Dee, the manager of the paper at the time the alleged libelous article was published. Mr. May says that his conversation took place several years prior to 1886, at which time he left the paper. May was an intimate friend of plaintiff. He testified:

"Mr. Scripps called my attention to an item in the paper which was complimentary in some way to Mr. Randall. * * * Said he did not care to have any more such articles, praising or puffing Mr. Randall, used. That is as far as I can recollect the conversation. I cannot remember the exact language, but I received the impression from the interview, whether directly or indirectly I can hardly say, that, if any articles should be written, they should only be such as were adverse or uncomplimentary to Mr. Randall."

On cross-examination he said:

"He gave me no direct, explicit instructions to publish anything uncomplimentary to Mr. Randall, or to attack him; but I could not avoid receiving the impression that he regarded Mr. Randall as an enemy, from what he said and his manner of saying it."

Mr. McLeod testified that he went on the paper as city editor in January, 1887, and that, as near as he could remember, Mr. Scripps told him there were two men in the city whom he would not like to see boomed through the medium of his property, one of whom was Mr. Randall; but that he received no instructions to treat him unfairly.

It is, in my judgment, contrary to reason and justice, and therefore contrary to law, to hold that these conversations, one of which happened at least five years, and the other about two and a half years, before the date of the publication complained of, and uncommunicated to the agent of defendant who wrote the article, are evidence that it was instigated by Mr. Scripps, or that he was in any measure responsible for it. Under these circumstances, the previous relations between Mr. Scripps and plaintiff, and the quarrels they might have had, were immaterial to the issue in this case. However great may have been his malice towards the plaintiff, the defendant cannot be held responsible for it, because he had nothing whatever to do with inspiring the article. A corporation cannot be held liable for the malice of one of its stockholders towards a person, unless it be shown that such stockholder inspired or counseled the corporate action complained of. This ruling applies to all the evidence of the relations between Mr. Scripps and Mr. Randall, and to Mr. Scripps' connection with the Evening News, both before and after the organization of the defendant corporation.

3. The court instructed the jury that there was no evidence of bribery, and refused to permit counsel to argue

that question to the jury. The learned counsel for the defendant, in a long and exhaustive brief, has collated the evidence which he claims tends to establish the plaintiff's reputation in the use of corrupt methods, and the motive and the opportunity for the use thereof in connection with the boulevard bill. If this be conceded, still the evidence fails to establish any specific acts of bribery. However reprehensible it may be for a member of the Legislature to keep "open house" for the entertainment of members, where they may partake of "light refreshments, wine, beer, liquors, and cigars," it falls short of establishing a case of bribery. A bribe is defined to be "a price, reward, gift, or favor bestowed or promised with a view to pervert the judgment or corrupt the conduct of a judge, witness, or other person." "To bribe" means "to give a bribe to a person; to pervert his judgment or corrupt his action by some gift or promise." To give entertainments for the purpose of unduly influencing legislation is wholly bad in morals, but does not constitute the crime of bribery. The court was therefore correct in this instruction to the jury. It still remained for the jury to determine whether such entertainments were given by plaintiff for the purpose charged, viz., improperly influencing the Legislature, the truth of which would be a complete defense to this portion of the article.

4. Defendant offered evidence tending to show specific acts of bribery committed by the plaintiff at different political gatherings prior to his nomination and election as a member of the Legislature. It requires no citation of authorities or argument to show that this testimony was properly excluded. Defendant had the right to show in mitigation of damages the general reputation of the plaintiff in this regard, but he could not be called upon at the trial to meet a charge of specific acts, of which he had no notice in the plea.

5. Complaint is made that the opening statement of plaintiff's counsel to the jury contained violent and unjustifiable language, tending to prejudice the jury, and that it was not confined to a statement of the facts and the law relied upon as a basis for recovery. Inasmuch as most of the language complained of was used in reference to Mr. Scripps, his connection with the defendant, and his relations with Mr. Randall, which we have held to be incompetent, we deem it unnecessary to comment upon this alleged error.

6. Mr. Murtagh, a member of that Legislature, testified, without objection, that "the general reputation of the Legislature at that time was very unsavory." On cross-examination the witness was asked as to the general reputation of individual members as to honesty and integrity. This was admitted, under objection and exception. The entire testimony as to the reputation of the Legislature at that time, and the reputation of the individual members thereof, except the plaintiff, was wholly incompetent and inadmissible, and should have been excluded by the court on its own motion, even if no objection was made. Whether the reputation of the Legislature or of its individual members was good or bad had no legitimate tendency to show that the plaintiff did or did not commit bribery, or that he was guilty or not guilty of any improper conduct in influencing legislation. It was competent to show statements made by plaintiff as to the purpose he had in going to the Legislature, his connection with the boulevard bill, his reputation there, his entertainments, his "open house," whether or not the members visited it and partook of his hospitality, and whether this was done for the purpose of improperly influencing the action and votes of members. But when the acts and motives of an individual member are assailed, his assailant cannot, in justification of his attack, and to prove its truth, say to him, "you were asso-

ciated with a body whose general reputation was bad, and some of whose members were of bad repute." The publication of the article was admitted. The sole issue was its truth, so far as it affected the plaintiff. If its truth was proven, the defendant had made a complete defense. If it failed to prove it, the plaintiff was entitled to the actual damages suffered. The issue was clear. The defendant had the right to show any improper conduct or language or offers of promise or reward to any member of the Legislature by the plaintiff; but it does not follow that, because he was interested in the passage of the bill, and it was reputed that some members were open to bribery, therefore the plaintiff was guilty of bribery or improper conduct. A member of the Legislature has not the choice of his company, and it would be a strange rule which would permit a jury to draw any inference against his honesty and integrity because of his association with that body, no matter what its reputation, or that of any of its members, may be.

7. Articles from the Evening News under dates October 22, 1888, January 10, 11, 12, 15, 17, and 19, 1889, were introduced in evidence, under defendant's objection that they were immaterial. We have carefully examined them, and find that only those of January 19 and October 22 have any materiality in this case. In the article of January 19 it is said:

"James A. Randall has rented a furnished house at Lansing for entertaining purposes during his stay there to work the boulevard scheme."

We think this material, in that it tends to show the *animus* of the article sued upon. The same reasoning applies to the articles of October 22. These articles are, with others, made the basis of another libel suit. *Quaere*, whether they are admissible for that reason in this suit;

97 Mich.—10.

but, as this question was not argued, we pass no opinion upon it. The other articles show no malice, make no charge of bribery or improper conduct, and are legitimate discussions as to the propriety of the construction of the boulevard at the expense of the city.

8. William J. Chittenden, a witness for the defendant, testified that the "general reputation of plaintiff, in respect to the corrupt use of money in political connections, was bad." On cross-examination the witness was asked the following question:

"These charges, such as you have heard against Mr. Randall, are common against our prominent politicians,— that they have bought delegates or bought conventions,— are they not?"

The question should have been excluded. It is monstrous to contend that, because other politicians are or are reputed to be guilty of corrupt practices, which tend to thwart the will of the people and are dangerous to good government, this will excuse Mr. Randall, if he be guilty of the same misconduct. The inquiry was wholly incompetent and immaterial, and could have had no other effect than to divert the attention of the jury from the real issue upon this branch of the defense; viz., the reputation of plaintiff in respect to the corrupt use of money in political connections,—an issue tendered by the offer of the testimony in chief, and accepted by the plaintiff, since no objection was made by his counsel to its introduction.

9. Counsel, in their closing arguments to the jury, made statements which were outside the record, and were therefore improper. One of them used this language:

"If there be anything that is accepted and known of all men in the city of Detroit, it is that the Evening News has been prosecuted for libel as no paper that was ever published in the city of Detroit has been. The records of our criminal courts show that James E. Scripps, as the editor-

and publisher of this paper, was bound over to the recorder's court to answer for a criminal libel against the judge of this court."

Other language of like character, referring to things that were not in the record, was used. The only justification urged on behalf of the plaintiff for the use of this language is that it was in reply to certain language used by the defendant's counsel in praise of Mr. Scripps and the Evening News. But the reference to facts of which there is no evidence in the record is improper. Were this the only error in the case, perhaps the judgment should not be set aside for that alone, in view of the argument made by defendant's counsel; but we deem it proper to mention it, in view of another trial.

Judgment reversed, and new trial ordered.

The other Justices concurred.