PEISNER v DETROIT FREE PRESS, INCORPORATED

1. Judgment—Summary Judgment—Failure to State Claim—Legal Sufficiency of Complaint—Well-Pleaded Allegations—Court Rules.

A motion for summary judgment on the ground that the opposing party has failed to state a claim upon which relief can be granted tests the legal sufficiency of the complaint only, and in ruling on such a motion a trial court must consider all the nonmoving party's well-pleaded allegations as true (GCR 1963, 117.2[1]).

2. Malicious Prosecution—Statutes—Treble Damages—Abuse of Process.

A statute which provides a statutory remedy of treble damages for malicious prosecution does not create a cause of action for abuse of process independent of the common law (MCLA 600.2907; MSA 27A.2907).

3. Process—Abuse of Process—Common Law—Elements.

The common law cause of action for abuse of process has two

References for Points in Headnotes

[1] 73 Am Jur 2d, Summary Judgment §§ 17, 26 et seq.
[2] 52 Am Jur 2d, Malicious Prosecution §§ 1, 2.
[3, 4] 1 Am Jur 2d, Abuse of Process § 2.
Necessity and sufficiency of allegations in complaint for malicious prosecution or tort action analogous thereto that defendant or defendants acted without probable cause. 14 ALR2d 264.
[5] 1 Am Jur 2d, Abuse of Process § 22.
[6] 52 Am Jur 2d, Malicious Prosecution § 9 et seq.
Prosecution of civil suit, without arrest of person or seizure of property, as ground of action for malicious prosecution. 150 ALR 897.
[7] 52 Am Jur 2d, Malicious Prosecution §§ 42, 121, 163.
[8] 23 Am Jur 2d, Depositions and Discovery §§ 143, 279.
29 Am Jur 2d, Evidence §§ 249, 251 et seq.
[9] 50 Am Jur 2d, Libel and Slander § 96 et seq.
[10] 50 Am Jur 2d, Libel and Slander §§ 349, 352–354.
Actual damages as a necessary predicate of punitive or exemplary damages. 17 ALR2d 527.
[11, 12] 22 Am Jur 2d, Damages § 236 et seq.

essential elements, (1) an ulterior purpose, and (2) an act which is improper in the regular conduct or prosecution of the case.

4. PROCESS—ABUSE OF PROCESS—INSTITUTION OF LAWSUIT—IRREGULAR ACTS.

The mere institution of a lawsuit is not enough to create a cause of action for abuse of process; the complainant must also allege that the malefactor has committed some act that is irregular in the use of process before the complainant has stated a cause of action for abuse of process.

5. PROCESS—ABUSE OF PROCESS—IRREGULAR ACTS—PRIOR ACTS.

Acts of a plaintiff occurring prior to the date that process is started are irrelevant to a cause of action for abuse of process for a showing that the plaintiff committed some act that is irregular in the use of process, since prior to the date that process is started there was no process to misuse.

6. MALICIOUS PROSECUTION—MALICIOUS CIVIL PROSECUTION—WRONGFUL INSTITUTION OF LAWSUIT.

An action for malicious civil prosecution is the correct cause of action for the wrongful institution of a lawsuit.

7. MALICIOUS PROSECUTION—MALICIOUS CIVIL PROSECUTION—PRIOR PROCEEDINGS—TERMINATED IN DEFENDANTS' FAVOR.

One of the essential elements of a cause of action for malicious civil prosecution is that a prior proceeding has been terminated in the prior defendant's favor; therefore, where an original libel action has not yet been terminated, it is impossible for the defendants in the libel action to maintain a counterclaim for malicious civil prosecution arising out of the principal action.

8. DISCOVERY—EVIDENCE—RELEVANT—ADMISSIBLE—NONPRIVILEGED —INTERROGATORIES.

Only relevant, admissible, nonprivileged information is subject to pretrial discovery by the use of interrogatories.

9. LIBEL AND SLANDER—EVIDENCE—FINANCIAL SITUATIONS—ADMISSIBILITY—CORPORATE DEFENDANTS—ACTUAL DAMAGES—WEALTH.

Evidence of a defendant's financial situation is inadmissible in a libel suit where the defendant is a corporation and the plaintiff is seeking only actual damages, although, as a general rule, evidence of a defendant's wealth or reputed wealth is admissible in a libel suit.

10. CONSTITUTIONAL LAW—LIBEL—PUNITIVE DAMAGES—KNOWLEDGE OF FALSITY—RECKLESS DISREGARD FOR THE TRUTH—CASE PRECEDENT.

The United States Supreme Court has ruled that it is unconstitutional for the states to impose punitive damages for libel without a showing that the defendant acted with knowledge of the falsity or with a reckless disregard for the truth.

11. DAMAGES—PUNITIVE DAMAGES—COMPENSATION FOR PLAINTIFF—DEFENDANTS' MISDEEDS.

The purpose of punitive damages is to fully compensate a plaintiff for the injury suffered by the plaintiff because of a defendant's actions, and not to punish the defendant for the defendant's misdeeds.

12. DAMAGES—PUNITIVE DAMAGES—PLAINTIFFS' INJURIES—DEFENDANTS' ACTIONS—MOTION TO COMPEL—INTERROGATORIES.

The focus is on the defendant's actions in determining if punitive damages should be awarded, although the focus is on the plaintiff's injuries in measuring punitive damages; therefore, a trial court, in an action for libel, did not err in denying a plaintiff's motion to compel a defendant newspaper to answer interrogatories pertaining to the newspaper's financial situation, since punitive damages are not intended to punish the defendant for its actions and evidence of the defendant newspaper's financial situation is immaterial.

Appeal from Wayne, Peter B. Spivak, J. Submitted March 4, 1976, at Detroit. (Docket Nos. 22175, 22176.) Decided April 5, 1976. Leave to appeal applied for.

Complaint by Balfour Peisner and Nora S. Peisner, his wife, against the Detroit Free Press and Louis Heldman seeking actual and punitive damages for libel. Defendants counterclaimed seeking damages for abuse of process by the plaintiffs. The plaintiffs' motion to dismiss the defendants' counterclaim and the plaintiffs' motion to compel the Free Press to answer certain interrogatories were both denied. Plaintiffs appeal as to each order, by leave granted. Reversed in part and affirmed in part.

*Barris & Crehan, P. C.* (by *Balfour Peisner,* of counsel), for plaintiffs.

*Kenneth Murray* and *Brownson Murray,* for defendants.

Before: D. E. HOLBROOK, JR., P. J., and MC-GREGOR and N. J. KAUFMAN, JJ.

D. E. HOLBROOK, JR., P. J. The plaintiffs instituted the initial suit on December 10, 1973, charging the defendants with libel for an article published on page 3A of the Detroit Free Press' November 20, 1973, edition. The suit also charged that the Free Press repeated the libel in a December 1 editorial. The article, written by defendant Heldman, charged Balfour Peisner with inadequately representing an indigent criminal defendant who was appealing his manslaughter conviction from Recorder's Court to this Court.[1] The suit charged that the article and the editorial constituted libel *per se* and sought actual and punitive damages in the amount of $6,412,000.

The defendants filed their answer to the plaintiffs' complaint on January 2, 1974. Twelve days later the defendants filed their counterclaim seeking $300,000 for abuse of process, both common law and statutory.[2] The counterclaim alleged that the plaintiffs' suit was filed for "vexation and trouble" to force the Free Press to hire Mr. Peisner to write a retraction of the November 20 article. This claim was based in part on Mr. Peisner's letter of November 23 to the editor of the Free Press demanding a retraction, in part on Mr.

---

[1] The decision of this Court in that case, with substituted defense counsel, is reported in *People v McIntosh,* 62 Mich App 422; 234 NW2d 157 (1975).

[2] *See* MCLA 600.2907; MSA 27A.2907.

Peisner's letter to the assistant court administrator on November 29, and in part on Mr. Peisner's letter to an assistant clerk of the Court of Appeals on December 7.

The plaintiffs filed a motion to dismiss the defendants' counterclaim on the basis that the counterclaim was not timely filed and that the counterclaim failed to set forth a cause of action against the plaintiffs. The trial court denied the plaintiffs' motion which the plaintiffs appeal by leave granted.

The plaintiffs also served the Free Press with certain interrogatories concerning the Free Press' financial situation. When the Free Press refused to answer the questions as irrelevant and inadmissible, the plaintiffs sought to compel the Free Press to answer the interrogatories. Following the trial court's denial of that motion, the plaintiffs were granted leave to appeal this question also.

I.

While the plaintiffs' motion in this case was labeled "a motion to dismiss" it is properly labeled a motion for summary judgment under GCR 1963, 117.2(1). *DeNike v Otsego County,* 45 Mich App 711, 714, n 1; 206 NW2d 786 (1973). A motion brought under GCR 1963, 117.2(1) tests the legal sufficiency of the complaint only. *Todd v Biglow,* 51 Mich App 346, 349; 214 NW2d 733 (1974), *lv den* 391 Mich 816 (1974). In deciding such a motion the trial court must consider all the defendants' well-pleaded allegations as true. *Weckler v Berrien County Road Commission,* 55 Mich App 7, 9; 222 NW2d 9 (1974). Thus for purposes of the plaintiffs' summary judgment motion the court was required to accept as true the allegation that

Mr. Peisner wrote various letters and instituted the libel action to cause "vexation and trouble" for the defendants.

In their counterclaim the defendants allege that they have both a statutory cause of action and a common law cause of action for abuse of process. Since they argue that the two causes of action are separate, we will examine each claim independently.

The defendants base their claim to a statutory cause of action for an abuse of process on MCLA 600.2907; MSA 27A.2907. However, a careful study of this inarticulately drafted statute convinces us that it does not create a cause of action for abuse of process. Contrary to the defendants' contention the phrase "for vexation and trouble" as used in the statute refers only to the lack of probable cause necessary to maintain an action for malicious prosecution. It does not relate to any element of abuse of process.

In addition, we have exhaustively reviewed the paucity of case law interpreting this 130-year-old statute. Our study of these cases reinforces our view that this statute does not create a cause of action for abuse of process. The cases that we have discovered in our research that have interpreted this statute have almost uniformly been cases for malicious prosecution.[3] The only case we were able to discover that relied on abuse of process implied that the statute was unavailable in a case claiming abuse of process. On appeal this Court reversed a verdict that had trebled the plaintiff's damages because the plaintiff had proven abuse of

[3] *Belt v Ritter,* 385 Mich 402; 189 NW2d 221 (1971), *Taft v J L Hudson Co,* 37 Mich App 692; 195 NW2d 296 (1972), *LaLone v Rashid,* 34 Mich App 193; 191 NW2d 98 (1971), *Sottile v DeNike,* 20 Mich App 468; 174 NW2d 148 (1969), *Leeseberg v Builders Plumbing Supply Co,* 6 Mich App 321; 149 NW2d 263 (1967). *But see Parson v Cadillac Outfitting Furniture Co,* 11 Mich App 472; 161 NW2d 401 (1968).

process and not malicious prosecution. *Parson v Cadillac Outfitting Furniture Co,* 11 Mich App 472, 475, 477; 161 NW2d 401 (1968).

Hence, we conclude that the statute does not create a cause of action for abuse of process independent of the common law. *LaLone v Rashid,* 34 Mich App 193, 201, 203; 191 NW2d 98 (1971). In each case in which the use of the statute has been approved, the Court has first outlined the elements necessary to plead a common law cause of action. While we are hesitant to ascribe any purpose behind such an ancient legislative enactment, we are firmly convinced that the purpose of this statute is to permit a person with a valid common law cause of action to recover treble damages. *LaLone v Rashid, supra* at 203.

Since the defendants do not have a statutorily defined cause of action for abuse of process, in order to maintain their counterclaim they must rely on the common law cause of action for abuse of process. The two essential elements for a claim of abuse of process are (1) an ulterior purpose, and (2) an act which is improper in the regular conduct or prosecution of the case. *Spear v Pendill,* 164 Mich 620, 623; 130 NW 343 (1911), *Pilette Industries, Inc v Alexander,* 17 Mich App 226, 227–228; 169 NW2d 149 (1969), 3 Restatement, Torts, § 682, comment a, p 464, Prosser, Torts (4th Ed), § 121, p 856.

Viewing the pleaded facts, together with their reasonable inferences, most favorably to the defendants, we find that the plaintiffs' libel action had an ulterior motive. It would be possible for the trier of fact to conclude that the libel action was instituted solely to coerce the Free Press to "hire" Balfour Peisner to write a retraction of the November 20, 1973, article. The letter to the Free

Press on November 23 sought more than just a retraction, it sought to force the Free Press to publish an article favorable to the plaintiffs. Likewise, the letters to the Courts could be interpreted as an attempt to bring pressure on the Free Press to accede to the plaintiffs' wishes.

However, before the defendants have stated a cause of action for abuse of process, they must also allege that the plaintiffs have committed some act that is irregular in the use of the process. This they have failed to do. The only improper act that the defendants allege that the plaintiffs have taken is to institute the libel action. However, the mere institution of a lawsuit is not enough to create a cause of action for abuse of process. *Spear v Pendill, supra.* The acts of the plaintiffs occurring prior to December 10, 1973, are irrelevant on this element of the cause of action since prior to that date there was no process to misuse. They are only relevant to show that the plaintiffs, in this case, had an ulterior motive in instituting the initial action. *Spear v Pendill, supra, quoting Wood v Graves,* 144 Mass 365, 368; 11 NE 567, 577; 59 Am Rep 95 (1887).

The correct cause of action for the wrongful institution of a lawsuit is an action for malicious civil prosecution. Such cause of action is directed against the introduction of groundless suits merely to harass a person. Prosser, *supra* at § 120, p 851. However, it is readily apparent from reviewing the elements of the tort of malicious civil prosecution that the cause of action is not available to the defendants in the present case. One of the essential elements of such a cause of action is that a prior proceeding has been *terminated* in the prior defendant's favor. *Turbessi v Oliver Iron Mining Co,* 250 Mich 110, 112; 229 NW 454; 69 ALR 1059

(1930), *Harris v Federal Asphalt Products, Inc,* 1
Mich App 318, 319; 136 NW2d 43 (1965), 3 Restate-
ment, Torts, § 674(b), p 440, Prosser, *supra* at 853–
854. Since the original libel action has not yet
been terminated, it is impossible for the defend-
ants to maintain a counterclaim for malicious civil
prosecution arising out of the principal action. *Cf.*
GCR 1963, 203.2.

The trial court erred in not granting the plain-
tiffs' motion for summary judgment as to the
defendants' counterclaim for abuse of process. The
defendants have failed to plead sufficient facts to
state a cause of action for abuse of process and
cannot plead sufficient facts to state a cause of
action for malicious civil prosecution.

II.

Subject to certain exceptions, in Michigan, only
relevant, admissible, nonprivileged information is
subject to pretrial discovery by the use of interrog-
atories. GCR 1963, 309.4, GCR 1963, 302.2(1), *Wil-
son v Saginaw Circuit Judge,* 370 Mich 404, 411;
122 NW2d 57 (1963). Hence the question we must
address ourselves to becomes: Should evidence of a
*corporate* defendant's financial situation be admis-
sible to measure punitive damages in a libel ac-
tion?

This precise question is a question of first im-
pression in Michigan. As a general rule, evidence
of a libel defendant's wealth or reputed wealth is
admissible in Michigan and most other jurisdic-
tions. *Farrand v Aldrich,* 85 Mich 593, 600; 48 NW
628 (1891), *Brown v Barnes,* 39 Mich 211, 214–215;
33 Am Rep 375 (1878). See also cases collected at
50 Am Jur 2d, Libel & Slander, § 475, pp 1005–
1006, n 14–18. The rule is subject to several excep-
tions though, one being central to this case. Evi-

dence of a libel defendant's financial situation is inadmissible when the defendant is a corporation, at least when the plaintiff is seeking only actual damages. *Randall v The Evening News Association,* 97 Mich 136, 138–140; 56 NW 361 (1893).

On appeal the plaintiffs ask us to follow the general rule and strictly limit the exception enunciated in *Randall v The Evening News Association.* The defendants, on the other hand, argue that the exception set forth in *Randall v The Evening News Association* should be liberally interpreted. In addition, they contend that the plaintiffs are not entitled to receive punitive damages and therefore this case comes squarely within the holding of *Randall v The Evening News Association. Gertz v Robert Welch, Inc,* 418 US 323, 350; 94 S Ct 2997, 3012; 41 L Ed 2d 789 (1974).

The United States Supreme Court ruled in *Gertz v Robert Welch, Inc* that constitutionally the states could not impose punitive damages for libel without a showing that the defendant acted with knowledge of the falsity or with a reckless disregard for the truth. *Gertz v Robert Welch, Inc, supra,* see *New York Times Co v Sullivan,* 376 US 254; 84 S Ct 710; 11 L Ed 2d 686; 95 ALR2d 1412 (1964). Contrary to the defendants' contention, however, the plaintiffs' pleadings do allege that the defendants acted with requisite intent. Since the plaintiffs may recover punitive damages if they are able to prove their allegations, we must determine if as a matter of policy evidence of a corporate defendant's financial situation should be admissible.

As the plaintiffs noted, the explicit holding of *Randall v The Evening News Association* is clear, in a libel case where only actual damages are sought the financial situation of a corporate de-

fendant is inadmissible. *Randall v The Evening News Association, supra,* at 140. The Supreme Court premised their holding in that case on the theory that such evidence was irrelevant to the issues being tried and highly prejudicial. *Randall v The Evening News Association, supra,* at 139, 140. The stated reason for admitting evidence of a libel defendant's wealth is that it is related to his social standing in the community. *Darling v Mansfield,* 222 Mich 278, 279; 192 NW 595; 34 ALR 1 (1923), *Farrand v Aldrich, supra.* However, in the case of a corporation, it has no social standing to be enhanced by reputed wealth.

"Its [the corporation's] libelous utterances will sting and injure according to the extent of its circulation, the character of the paper published, as it is known by its publications, and the character of the party assailed. A newspaper published by a corporation which is reputed to pay no dividends may have as extensive a circulation as one published by a corporation which is reputed to pay large dividends. So, one reputed to be worth $50,-000 may have as extensive a circulation as another reputed to be worth $500,000." *Randall v The Evening News Association, supra,* at 140.

The plaintiffs base their argument on the theory that the purpose of punitive damages is to punish the defendants for their misdeeds. *Dalton v Meister,* 52 Wis 2d 173, 180; 188 NW2d 494, 498 (1971), *cert den,* 405 US 934; 92 S Ct 947; 30 L Ed 2d 810 (1972), Prosser, *supra* at § 2, p 9. They argue that the only way by which the jury may intelligently measure the correct level of punishment is through evidence of the defendant's financial situation. *Tipps Tool Co v Holifield,* 218 Miss 670, 686; 67 So 2d 609, 616 (1953). To support their position the plaintiffs cite numerous cases from our sister states. See, *e.g., Rosenberg v J C Penney Co,* 30 Cal

App 2d 609, 627; 86 P2d 696, 705 (1939), *Tipps Tool Co v Holifield, supra, Neigel v Seaboard Finance Co,* 68 NJ Super 542, 554; 173 A2d 300, 307 (1961), *Roth v Greensboro News Co,* 217 NC 13, 21; 6 SE2d 882, 887 (1940), *Fawcett Publications, Inc v Morris,* 377 P2d 42, 53 (Okla 1962), *appeal dismissed,* 376 US 513; 84 S Ct 964; 11 L Ed 2d 968 (1964), see also Annotation, *Evidence of wealth or reputed wealth of defendant in action for libel or slander* 34 ALR 3, 8. While acknowledging that the plaintiffs are advocating the position taken by a majority of our sister courts, we feel that the better rule is to exclude such evidence.

In Michigan the purpose of punitive damages (also known as exemplary or vindictive damages) is not to punish the defendants for their misdeeds. *Smith v Jones,* 382 Mich 176, 204; 169 NW2d 308 (1969), *Boydan v Haberstumpf,* 129 Mich 137, 140; 88 NW 386 (1901), *Stuyvesant v Wilcox,* 92 Mich 233, 241; 52 NW 465; 31 Am St Rep 580 (1892). The purpose of punitive damages is to fully compensate the plaintiffs for the injury suffered by them because of the defendants' actions. *Detroit Daily Post Co v McArthur,* 16 Mich 447, 453 (1868), *Oppenhuizen v Wennersten,* 2 Mich App 288, 297; 139 NW2d 765 (1966). As Mr. Chief Justice COOLEY stated:

"The purpose of an action for tort is to recover the damages which the plaintiff has sustained from an injury done him by the defendant. In some cases the damages are incapable of pecuniary estimation; and the court performs its duty in submitting all the facts to the jury, and leaving them to estimate the plaintiff's damages as best they may under all the circumstances. In other cases there may be a partial estimate of damages by a money standard, but the invasion of the plaintiff's rights has been accompanied by circum-

stances of peculiar aggravation, which are calculated to vex and annoy the plaintiff and cause him to suffer much beyond what he would suffer from the pecuniary loss. Here it is manifestly proper that the jury should estimate the damages with the aggravating circumstances in mind, and that they should endeavor fairly to compensate the plaintiff for the wrong he has suffered. But in all cases it is to be distinctly borne in mind that compensation to the plaintiff is the purpose in view, and any instruction which is calculated to lead them to suppose that besides compensating the plaintiff they may punish the defendant is erroneous." *Stilson v Gibbs,* 53 Mich 280, 284; 18 NW 815 (1884).

Although the focus is on the plaintiffs' injuries in measuring punitive damages, the focus is on the defendants' actions in determining if punitive damages should be awarded. *Long v Tribune Printing Co,* 107 Mich 207, 215; 65 NW 108 (1895), *Gertz v Robert Welch, Inc, supra.* It has long been the position of the courts of Michigan that the sting of the libel will be much greater when the defendants have acted with either knowledge of the falsity of the material or with reckless disregard for the truth.[4] *Long v Tribune Printing Co, supra* at 215–216. Since the injury is greater because of the defendants' actions, the plaintiffs are entitled to recover greater damages. *Watson v Watson,* 53 Mich 168, 176; 18 NW 605; 51 Am Rep 111 (1884).

Since punitive damages are not intended to punish the defendants for their actions, evidence of the Free Press' financial situation is immaterial. The financial situation of the Free Press does not aggravate or mitigate the plaintiffs' injuries. The

---

[4] Prior to *Gertz v Robert Welch, Inc,* 418 US 323; 94 S Ct 2997; 41 L Ed 2d 789 (1974), if the defendants were merely negligent in publishing a libel they could be held liable for punitive damages on the same theory. *Long v Tribune Printing Co,* 107 Mich 207, 215; 65 NW 108 (1895).

plaintiffs' injuries are no greater if the Free Press earns $5,000,000 per year and has a net worth of $50,000,000 than if the Free Press only earns $5,000 per year and has a net worth of $500,000. *Randall v The Evening News Association, supra.*

Furthermore, we agree with the trial court that the introduction of this evidence would only create collateral issues and confuse the jury on the issue of liability. Determining the financial situation of a modern corporation requires more than simply presenting the corporation's balance sheet and profit and loss statement to the jury. There are simply too many variables in modern accounting techniques to make the figures meaningful to laymen without detailed analysis.

The trial court did not err in denying the plaintiffs' motion to compel the Free Press to answer the interrogatories pertaining to its financial situation. Such evidence would be inadmissible at trial and is therefore not subject to discovery through interrogatories.

Reversed in part and affirmed in part. Remanded for proceedings consistent with this opinion. No costs, neither party having prevailed in full.