# OCTOBER TERM, 1893.*

CALVIN LUCAS v. THE MICHIGAN CENTRAL RAILROAD COMPANY.

*Carriers—Ejection of passenger—Exemplary damages.*

| 98 | 1 |
| --- | --- |
| 107 | 219 |
| 107 | 686 |

| 98 | 1 |
| --- | --- |
| 116 | 217 |
| 98 | 1 |
| 148 | ³253 |

1. Where a passenger receives a check from the conductor on the surrender of his ticket, and goes into another car, and, upon his fare being demanded, fails to produce the check, and claims that none was given him, and, on his refusal to return to the other car for identification, is ejected from the train, he cannot recover damages of the railroad company for such ejection.

2. Where a passenger receives no check from the conductor on surrendering his ticket, and goes into another car, and, on his fare being demanded, informs the conductor of such facts, and offers to prove their truth by a passenger who sat with him when the ticket was taken up if the conductor will go with him into the other car, which the conductor refuses to do, and, on the refusal of the passenger to pay his fare, ejects him from the train in the night-time, eight miles from his residence and one mile from the nearest railroad station, the passenger is entitled to recover of the railroad company, not only those damages ordinarily termed "actual damages," but for whatever injury to his feelings or of indignity, pain, and disgrace such conduct would tend to produce in view of the time, place, and circumstances.

3. It is error to instruct the jury that a plaintiff is entitled to exemplary damages, without explaining to them what is meant by that term.

4. Where wantonness or mischief on the part of an agent acting within the scope of his authority causes additional injury in body or mind, the principal is liable to make compensation for the whole injury suffered.

* Continued from Vol. 97.

Error to Wayne. (Reilly, J.) Argued October 13, 1893. Decided December 4, 1893.

Case. Defendant brings error. Reversed. The facts are stated in the opinion.

*Henry Russel* (*Ashley Pond*, of counsel), for appellant. *Dickinson, Thurber & Stevenson*, for plaintiff.

McGRATH, J. Plaintiff purchased an excursion ticket at Dexter, good to Detroit and return, and rode to Detroit thereon. At about 8 o'clock on the evening of the same day he took the train at Detroit for Dexter, taking a seat in the smoking car. When a few miles out of Detroit, the conductor took up his ticket. When the train arrived at Ypsilanti, plaintiff left the smoker, and took a seat in a regular passenger car. After the train left Yysilanti, the conductor came to plaintiff, and demanded his fare. Plaintiff informed him that he had given him his ticket in the other car. The conductor then asked him for his check. Plaintiff replied that he had not been given a check. The conductor threatened to put him off, but did not at that time, but told him that he would have to pay his fare, or get off at Ann Arbor. Plaintiff responded that he had surrendered his ticket, and would not pay his fare. After the train left Ann Arbor, the conductor returned, and, plaintiff refusing to pay his fare, the conductor called the brakeman, and they together pulled plaintiff from his seat, took him through the car, and put him off, about one mile west of Ann Arbor and eight miles east of Dexter. Plaintiff testified that when his ticket was taken up no check was given him; that when the conductor came to him the second time, and again just before he was put off, he told the conductor that if he would go back with him into the smoking car he would prove his assertions by the man who sat with him, but that the conductor told him that he had no time to

bother with him; that the conductor insisted that he (plaintiff) had gotten on at Ypsilanti; that he was ejected from the car by force at about 10 o'clock at night; that the night was very dark; that he could not even see the fences on either side of the track; and that he was compelled to walk home. It was not claimed on the trial that plaintiff had not surrendered a ticket, but the conductor insisted that he had given him and all of the excursionists checks; that he told plaintiff that if he would bring one man that knew him, that said he came from Detroit, it would be all right, but he would not do that; that he used no force in ejecting him; and denied that plaintiff had requested him to go into the smoking car for the purpose of identification.    One of plaintiff's witnesses, who was in the smoker, testified that the conductor gave plaintiff no check when the ticket was taken up.    Another witness, who was in the car from which plaintiff was ejected, testified that she was an excursionist, as were others who were with her; that no checks were given to her or the other excursionists with her; and that she heard plaintiff say to the conductor that if he would go into the smoking car with him (plaintiff) he could prove that he got on at Detroit, and had given up his ticket, and the conductor refused to go.    Plaintiff had a verdict for $1,200, and defendant appeals.

The alleged errors relate to the refusal of requests to charge, and to the instructions given on the question of damages.

The defendant was entitled to have the jury instructed as to the law applicable to its version of the case.    After the surrender of his ticket, plaintiff had left his seat in the smoking car, and taken a seat in another car.    If plaintiff received a check from the conductor, and, when his fare was demanded, did not produce the check, and, when requested, refused to go into the other car for

identification, he could not recover. The check, if given, was given him for the very purpose of identification. It was notice to him that the conductor would rely upon its production, and not upon recollection.

The defendant was entitled to the instruction that there was no evidence of malicious intention on the part of the conductor; but, under the circumstances of this case, if the jury believed the testimony introduced on behalf of plaintiff, the plaintiff was entitled to recover, not only those damages which are ordinarily termed "actual damages," but for whatever injury to his feelings or of indignity, pain, and disgrace such conduct would tend to produce in view of the time, place, and circumstances. Conduct may be so hasty and ill-timed, and so far disregard proper precaution and the rights of others, as to be reckless and oppressive, and the law regards recklessness and oppression as aggravating the injury. *Detroit Daily Post Co. v. McArthur,* 16 Mich. 447, 455; *Josselyn v. McAllister,* 22 Id. 310; *Kreiter v. Nichols,* 28 Id. 499; *Elliott v. Herz,* 29 Id. 202; *Kehrig v. Peters,* 41 Id. 475; *Ross v. Leggett,* 61 Id. 445. If plaintiff's legal rights were violated by the expulsion from the train, it was for the jury to consider the injury to his feelings that such conduct would be likely to produce, in view of his consciousness that he was without fault, and had a right to remain upon the train to his destination. *Railroad Co. v. Flagg,* 43 Ill. 364; *Carsten v. Railroad Co.,* 44 Minn. 454; *Railroad Co. v. Rice,* 64 Md. 63; *Railroad Co. v. Holdridge,* 118 Ind. 281. It was expressly held in *Railroad Co. v. Winter's Adm'r,* 143 U. S. 60, that, if plaintiff was rightfully on the train as a passenger, he had the right to refuse to be ejected from it, and to make a sufficient resistance to being put off to denote that he was being removed by compulsion, and against his will; and the fact that under such circumstances he was put off the train was of itself

a good cause of action against the company. Defendant's belief cannot be held to justify unreasonable or reckless conduct. *Welch v. Ware*, 32 Mich. 77; *Raynor v. Nims*, 37 Id. 34.

The court was in error, however, in instructing the jury that plaintiff was entitled to exemplary damages, in the absence of any explanation as to what was meant by that term. *Detroit Daily Post Co. v. McArthur, supra.* The court had already instructed the jury that plaintiff was entitled to recover as actual damages for such pain and mortification and disgrace as the act entailed, and then informed the jury that if plaintiff made a proposition to the conductor to step back into the other car, and allow him to prove that he got on at Detroit and surrendered his ticket, then he was entitled to recover, in addition to his actual damages, what the law calls "exemplary damages." The jury were left free to add to the amount which they found that plaintiff had suffered from mortification, pain, and disgrace a further sum as a punishment. The aim of law which gives redress for private wrongs is compensation to the injured, rather than the prevention of a recurrence of the wrong. The law recognizes the fact that an injury may be intensified by the malice or willfulness or oppressiveness or recklessness of the act, and simply allows damages commensurate with the injury when these elements are present. The added injury in consequence of their presence is not always susceptible of proof, hence the matter is left to the sound discretion of the jury. Courts, however, should call attention to the elements that should be considered by juries in this class of cases, and caution them from acting upon improper theories. *Josselyn v. McAllister*, 22 Mich. 310; *Scripps v. Reilly*, 38 Id. 10; *Stilson v. Gibbs*, 53 Id. 280; *Wilson v. Bowen*, 64 Id. 133.

It is urged that the defendant is not liable in exemplary damages for the oppressive or reckless conduct of the con-

ductor, and *Railway Co. v. Prentice*, 147 U. S. 101, is relied upon. In that case the act was wholly without the line or scope of the conductor's authority, and the court expressly recognize the rule that, if any wantonness or mischief on the part of an agent acting within the scope of his employment causes additional injury to the plaintiff in body or mind, the principal is liable to make compensation for the whole injury suffered, and a number of cases are cited in support of the doctrine.

For the errors mentioned, the judgment is reversed, and a new trial ordered.

The other Justices concurred.