LONG v. TRIBUNE PRINTING CO.

107   207
s 113   262
107   207
134   ¹ 45
107   207
142   ¹644

1. LIBEL—EVIDENCE—MALICE.

In an action for newspaper libel, an article subsequently published in another paper, containing plaintiff's explanation of the circumstances constituting the foundation for the charge complained of, and shown to have been read by defendant at the time of his refusal to publish a retraction, is admissible, upon the question of motive; and, for a like purpose, it is competent to show what was said by defendant when asked to retract.

2. SAME—JUSTIFICATION—PROBABLE CAUSE—INSTRUCTIONS.

The publication of an article imputing the commission of a crime is not justified by the existence of reasonable grounds for a belief in the guilt of the person accused; and therefore, in an action for libel founded upon such publication, a request for an instruction that if, from such facts stated in the article as were true, there was reasonable ground to suspect the plaintiff of being implicated in the offense charged, the jury, in determining the damages, can only consider such portions of the article as they may find to be untrue to the extent that the statements made therein would tend to confirm or strengthen such suspicion of guilt, is properly refused.

3. SAME—DAMAGES—EVIDENCE.

While the publisher of a newspaper cannot be held in exemplary damages for the actual, personal malice of his employés in publishing a libel (*Detroit Daily Post Co.* v. *McArthur*, 16 Mich. 447), he is liable for all actual damages sustained, including injury to the feelings of the person libeled; and, as bearing on this element of damage, the recklessness, carelessness, or negligence of such employés in respect to the publication may be considered by the jury.

Error to Wayne; Frazer, J. Submitted October 23, 1895. Decided December 3, 1895.

Case by John H. Long against the Tribune Printing Company and Percival R. Benson, impleaded with James E. Scripps, for libel. From a judgment for plaintiff, defendants bring error. Affirmed.

*Brooke & Spalding,* for appellants.

*Griffin & Warner,* for appellee.

MCGRATH, C. J. Plaintiff sued defendants for a libelous publication, and recovered judgment. The article was published on July 29th, and charged plaintiff (a policeman) with being implicated in a burglary on the morning of July 26th. The circumstances attending the affair, which immediately directed attention to plaintiff, had been well known to the police department for three days prior to the publication, and a satisfactory explanation had been made to the department. The article, not-

withstanding, stated that "an investigation has since been going on;" that the affair was "being guarded with the utmost secrecy;" that "a couple of detectives were at work on the case;" that "it is claimed that some property found in the possession of the patrolman has been identified by the proprietor of the store" which it alleged had been burglarized, "the possession of which the patrolman could not satisfactorily explain," and that "startling developments are expected." The only circumstance directing attention to plaintiff was the fact that a dog (of a roving disposition), owned by plaintiff (and which for several days had been missing from home), was found in the store. No locks were picked or broken. Two or three hair brushes were missing or misplaced, and it did not clearly appear which. A rear cellar door appeared to have been pushed open.

Defendants gave notice that they would prove that certain of the statements made in the article were true; that, as to the other statements and conclusions, they had relied upon information received; and that said article was published in good faith, and after a careful examination into the facts and circumstances, and without malice or unlawful motive.

Plaintiff testified that on the day of the publication he went to the office of the Tribune, and saw Mr. Benson, the city editor, and requested a retraction.

"I asked him whether he was acquainted with me, and he said he was. I asked him whether that was proper to publish anything like that, and whether it was so, or whether he believed it was so. He says, 'That is the way it was brought to me, and I published it.' I says, 'You never stopped to think or investigate the matter before you published this?' He says, 'No, sir.' I told him, 'I suppose, because I am a police officer, you can publish most anything you like?' He says: 'Well, as far as your being a policeman is concerned, I do not care anything about that. In fact,' he says, 'I do not give a damn for the whole police department.' I says, 'All right; if you

107 MICH.—14

believe that way, we will proceed, and do something else.'"

Afterwards, and on September 14, 1893, a written demand was made upon the paper for a retraction.

Plaintiff called one Whitely, who testified that he was managing editor of the paper. A copy of the Evening News of July 29th, headed: "A dog story, with some bearing on a burglary. The robbers fled, and left the dog behind. His owner proves to be Policeman Long, but the latter has a satisfactory explanation,"—was shown witness, and he was asked if he had read it. He answered that he had, on the day of its publication. He was asked if, after he had read it, he published any fact or explanation made by Long in that article. He replied, "No, sir; we did not consider it necessary." The article was then offered and received in evidence. Error is assigned on its receipt.

It was entirely proper, as bearing on the question of defendants' motive, to show what occurred when asked to retract. It was also proper to show what knowledge defendants possessed at the time of the request for retraction. Defendants had given notice that they had acted without malice, and it was competent for plaintiff to show anything bearing upon that question.

Counsel for defendants requested the court to instruct the jury as follows:

"The only statements in the article, for the publication of which the jury can find the plaintiff is entitled to any damages, are those concerning the discovery of stolen property in his possession, its identification by the proprietor of the store, and the plaintiff's inability satisfactorily to explain his possession thereof. In considering the bearing of these statements upon the question of damages, the jury should consider whether, and to what extent, the effect of the publication of such statements of the article as they shall find to be true was enhanced, and the weight and credibility of the charge thereof made against the plaintiff increased, by reason of these statements.

"If the jury shall find that, from such facts stated in the article as were true, there was reasonable ground to suspect the plaintiff of being implicated in the burglary, then, in determining his damages, they can only consider such portions of the article as they may find to be untrue to the extent that the statements made in such portions would tend to confirm or strengthen such suspicion of guilt."

The court gave the following instructions upon that subject: ·

"On the question of damages, they should also consider whether, and to what extent, prior to the publication of the article, it was known by the plaintiff's neighbors and by members of the police force that he was suspected of being implicated in the burglary; and whether, and to what extent, the grounds of such suspicion were known. The knowledge of such suspicion and its grounds would tend to diminish the damages to a greater or less extent, according as the suspicion and its grounds were more or less widely known among plaintiff's neighbors and the police force.

"In considering the question of damages, the jury should consider whether, and to what extent, any portion of the article which they may find to be untrue increased the effect or enhanced the weight and credibility of the charge made against the plaintiff by such portions of the article as they may find to be true.

"No damages can be awarded to plaintiff for the publication of any statement or statements in the article which the jury shall find to be substantially true."

The first paragraph of the request is not in accord with the facts. The headlines of the article are as follows: *"Policeman and burglar. The Detroit department said to have one of that sort. He pretends to be sick, and is suspected of having gone at once and robbed a store."* As to the last paragraph of the instruction asked for, probable cause to suspect does not excuse an imputation of crime, especially when the truth which would dispel the suspicion is easy of access. The instruction given covered the subject, and protected the defendants.

The principal contention is made over that portion of the charge in which the court said:

"The uncontradicted evidence in this cause shows that said reporter knew said plaintiff; that he knew the beat which he was patrolling; that he had been informed of the alleged commission of the burglary, and plaintiff's connection with it, on the evening of July 28th; and yet during such time he saw neither the plaintiff, said Delage, nor the superior officers of the police department, to ascertain the truth or falsity of said publication. These considerations the jury are entitled to weigh in considering the question as to whether the article was published in a reckless or careless manner.

"I give you the ninth as I have modified it: It is further claimed by the plaintiff that the Evening News, on July 29, 1893, published a statement purporting to be made by the plaintiff as to his connection with the alleged burglary; that this statement came to the attention of Mr. Whitely, managing editor of the Tribune, on said day; yet that from such time no publication of such explanation was made by said Tribune Printing Company. The jury are also to consider this neglect in determining the question of damages which the plaintiff is entitled to recover. * * *

"In the consideration of this question of damages, you have a right to take into consideration everything connected with this case,—the method in which it was published, the manner in which it was published, the information which these people received, and how they received it, and what pains they took for the purpose of determining its truth; all for the purpose of determining the actual malice or lack of care that might have influenced the publication of this article, if you shall decide that this publication referred to the plaintiff in this case. There is no evidence in the case, so far as I understand it, that shows any malice upon the part of the Tribune Company against this plaintiff that will warrant me in saying to you that any exemplary, punitory, or vindictive damages might be awarded. Now, the damages you are entitled to award, if you shall find that the publication applied to the plaintiff, are these: You are at liberty to award such damages as you think this plaintiff is entitled to on account of injury to his feelings, to his character

and reputation, and for humiliation, shame, and disgrace, worriment, and the effect the publication will have upon him in the future. You are at liberty to consider the situation, the character of the publication, its circulation, the probability of its being understood and believed. * * * The damages must be within these limits,—injury to feelings, character, reputation, humiliation, shame, disgrace, worriment, and the effect the publication will have upon him in the future. Whether you raise or lower these damages according to your judgment, it must be within these limits, but not for any other purpose."

The court further instructed the jury that—

"There is no evidence upon which the jury can award any damages as against any of the defendants in excess of actual damages, including damages for injury to the plaintiff's feelings and to his reputation. * * * There is no evidence upon which any damages can be awarded or increased against the defendant Tribune Company on account of the express malice of any of its employés. * * * The jury cannot consider the evidence of the publication of the article in the News, or the contents of that article, or of its coming to the knowledge of any of the employés of the Tribune Company, after the publication of the article complained of, in fixing their award of damages against said Tribune Company. That evidence has no bearing upon the amount of damages to be awarded against the Tribune Company."

It is insisted by counsel for the defendants that the jury were not entitled to consider the recklessness, carelessness, or negligence of the employés of the Tribune Company as bearing upon the question of damages. The jury were instructed that the facts would not warrant the giving of exemplary, punitory, or vindictive damages. The words "determining the actual malice" were inconsistent with the other portions of the charge, and the court immediately corrected any impression that might otherwise have been produced by the use of that language.

Counsel for defendants rely upon *Detroit Daily Post Co.* v. *McArthur*, 16 Mich. 447, as supporting their contention.

In that case defendants' counsel requested the trial court to instruct the jury that punitive or exemplary damages could not be recovered; but the court refused so to do, but did charge that, if defendants published the libel maliciously or recklessly, the jury were at liberty to give exemplary damages with reference to all the circumstances of the case. The right to damages for injury to feelings is clearly recognized in that case, and it is expressly held that the sense of injury is always aggravated or lessened in proportion to the degree of perversity exhibited by the offender; that in all libel cases this injury to the feelings is a proper element to be considered, in addition to the damage to reputation and other attendant grievances; that, on the same principle, anything having a tendency to reduce the extent of the voluntary wrong is to be considered in mitigation; that it is the duty of every publisher to see, at all hazards, that no libel appears in his paper; that every publisher is liable not only for damages to credit and reputation, but also for such damages on account of injured feelings as must unavoidably be inferred from such a libel, but that *no further damages* than these should be given if the publisher has taken such precautions as he reasonably could to prevent such an abuse of his columns; and when the mischief has been done in spite of precautions, the carefulness exercised should be considered in mitigation of that portion of the damages which is awarded on account of injured feelings. Mr. Justice CAMPBELL there says:

"The employment of competent editors, the supervision by proper persons of all that is to be inserted, and the establishment and habitual enforcement of such rules as would probably exclude improper items, would reduce the blameworthiness of a publisher to a minimum for any libel inserted without his privity or approval, and should confine his liability to such damages as include no redress for wounded feelings beyond what is inevitable from the nature of the libel. And no amount of express malice in his employés should aggravate damages

against him when he has thus purged himself from active blame.  *  *  *  While, therefore, in the present case, the reporters were guilty of carelessness in receiving hearsay talk of legal charges, which could only be lawfully published if in accordance with the documentary facts, and while there could be no justification for publishing outside scandal against an individual from any source whatever, yet the defendants were only responsible, beyond the damages recoverable under any circumstances for such a libel, to the extent of their own conduct in the care or want of care used in guarding their columns against the insertion of such articles."

Damages for injury to feelings, shame, mortification, mental anxiety, insulted honor, and indignation have always, in this State at least, been regarded as actual damages, and not as exemplary, punitory, or vindictive damages. *Scripps* v. *Reilly*, 38 Mich. 10. One who has been defamed is entitled to compensation in damages to the extent of his injury, and only to that extent. Confusion arises from the use of terms in this class of cases, and it would be well if the terms "exemplary damages," "punitory damages," and "vindictive damages" were omitted from the judicial vocabulary, in this class of cases, at least. The term "malice," in the statement that malice is presumed from the publication of libelous matter, is liable to be misunderstood. Malice, in its ordinary acceptance, means ill will, but in its legal sense it means a wrongful act done voluntarily, without just cause or excuse; and in the use of the term this distinction should be pointed out. The sting of an injury sustained by reason of an act willfully, recklessly, or negligently done is much greater than if the result of accident or mistake. A publication of defamatory matter, made when the means of ascertaining the truth are easily accessible, and in the absence of extenuating circumstances, or those which tend to excuse the wrong, always aggravates the injury. And in my own view, the very accessibility of the facts tending to show the falsity of the publication gives added force to the accusation. But, however this may be, if

it be true that a publisher is liable for the damages actually occasioned, that the injury to feelings is a proper element of damage, and that the sense of injury may be aggravated by the circumstances under which the libel is published, the injury to feelings is not diminished by the fact that the fault or recklessness or negligence is that of a reporter, and not that of the manager. Those circumstances which are calculated to reduce the injury are always allowed to be shown to limit the recovery. If rumors were rife, or the facts were such as to create suspicion, or probable cause for a belief in the truth of the facts published existed, and a diligent endeavor was made to get at all the facts, and those were secured which were accessible, these facts bear upon the question as to what conditions tending to aggravate the injury to feelings were actually present. These circumstances are allowed to be shown, not as an offset to the damages, but because they tend to mitigate them. The jury determine what the conditions and circumstances calculated to aggravate or palliate the offense were. The McArthur case is frequently cited in support of the rule that a corporation is not liable in this class of cases for vindictive damages, because the writer, its agent, was actuated by personal malice, and so the case has been understood. Injury to feelings has always been regarded as a proper element of damages in cases of defamation of character, inevitable from the nature of the libel, and recoverable in all cases. In the recent case of *Hatt* v. *Evening News Association*, 94 Mich. 114, we held that plaintiff was entitled to exemplary damages, inasmuch as information of the falsity of the statements contained in the article was brought home to the reporter before the publication.

Mr. Cooley, in his work on Torts, p. 195, says:

"The publisher of a newspaper must, at his peril, see that the supervision of his business is such as to exclude all libelous publications, and he is responsible though one is made without his knowledge, and notwithstanding stringent regulations made by himself, which, if

observed, would have prevented it.   This liability is not planted on the ground merely of the duty of the principal to see that his business is managed in good faith and with proper care, but it corresponds to the liability of one who, having brought upon his premises something extremely liable to inflict great and irreparable injury, is required, at all events, to make good the injury resulting from the inadequacy of his precautions."

Mr. Townshend (Sland. & L. § 122) says:

"Every one is charged with the duty to exercise such a vigilance in the selection of agents, animate and inanimate, as are competent and adequate to the performance of the business they may be required to transact, and the ends they may be designed to accomplish.   He must exercise such a control over them that in the transaction of his business they neither do nor omit to do any act amounting to a wrong. He cannot escape this liability by omitting to exercise this vigilance, for such omission is itself negligence. It is upon this principle, and not upon any presumption of malice, that an employer or principal is held responsible for the act of his servant or agent."

Mr. Merrill, in his work on Newspaper Libel (page 136), says that the liability of the proprietor of a newspaper grows out of the ruling doctrine in the law of agency that a principal is responsible for the acts of his agent within the general scope of the authority which he has conferred upon the agent.

"The proprietor of the newspaper may be compared to one who keeps a dangerous animal, and who is bound so to keep it that it does no harm.   If harm ensues, he must answer for it."

The author refers to the case of *Smith* v. *Ashley,* (1846) 11 Metc. (Mass.) 367, but says that case will be found to be directly in conflict with many others.   That case has not been followed in the later Massachusetts cases.   In *Com.* v. *Morgan,* 107 Mass. 199, 203, it is said that the rule of civil liability is broader, and the principal must respond in damages for the default of the agent or servant, although he had no knowledge of it, or had actually for-

bidden it in advance, and exercised due care to prevent it. In *Lothrop* v. *Adams*, 133 Mass. 471, the liability of the proprietor of a newspaper in damages for a libel published without his knowledge by his agent is regarded as settled; citing *Dunn* v. *Hall*, 1 Ind. 344; *Shepheard* v. *Whitaker*, L. R. 10 C. P. 502; *Andres* v. *Wells*, 7 Johns. 260; *Perret* v. *Times Newspaper*, 25 La. Ann. 170; *Storey* v. *Wallace*, 60 Ill. 51. It was there held, upon the ground of agency, that a partner in a newspaper enterprise was liable for the malicious conduct of his copartner; citing *Durant* v. *Rogers*, 87 Ill. 508; *Wolf* v. *Mills*, 56 Ill. 360; *Chester* v. *Dickerson*, 54 N. Y. 1; *Guillou* v. *Peterson*, 89 Pa. St. 163.

In *Lee* v. *Village of Sandy Hill*, 40 N. Y. 442, the court, after quoting from Story on Agency (§ 452) that the principal is liable in a civil suit to third persons for the frauds, deceits, concealments, misrepresentations, torts, and negligences of his agent in the course of his employment, although the principal did not authorize, justify, or participate in, or, indeed, know of, such misconduct, or even if he forbade the acts or disapproved of them, says–the rule of liability is not based upon any presumed authority in the agent to do the acts, but upon the ground of public policy. All that is necessary to render the principal liable for the malfeasance of the agent is that the tort must be committed in the course of the agency; not that the agency authorized it, but that the employment afforded the means of committing the injury. *Rounds* v. *Railroad Co.*, 3 Hun, 329; *Buffalo Lubricating Oil Co.* v. *Standard Oil Co.*, 42 Hun, 153; *Bruff* v. *Mali*, 34 How. Pr. 338; *Mott* v. *Ice Co.*, 73 N. Y. 543; *Huff* v. *Bennett*, 4 Sandf. 120.

In *Rounds* v. *Railroad Co.*, supra, a boy was pushed from a moving train. In *Bruff* v. *Mali*, the court say "the wrongful act is the servant's in fact, and the principal's by construction." See, also, *Com.* v. *Damon*, 136 Mass. 449; *Curtis* v. *Mussey*, 6 Gray, 261; *Buckley* v. *Knapp*,

48 Mo. 152; *Com.* v. *Willard,* 9 Wkly. Notes Cas. 524; *Lake Shore, etc., R. Co.* v. *Prentice,* 147 U. S. 101; *Lucas* v. *Railroad Co.,* 98 Mich. 1.

The rule as settled by these authorities (and there seems to be little conflict in the books upon the question) is that the publisher of a newspaper is liable for injuries resulting from his own neglect, or from the neglect of his agents in the course of their employment.

In the present case the publication was in no sense fugitive, casual, or accidental. The article seems to have been published in the ordinary course. It came through the ordinary channels; was submitted to the city editor, whose duty it was to examine it; and the headlines were prepared by him, or under his direction; and no existing rule respecting the collection of the facts, the verification of the matter, the examination of the article, or its publication, is shown to have been infringed or violated.

The judgment is affirmed.

The other Justices concurred.