## WHITE *v.* GRAND RAPIDS & INDIANA RAILROAD CO.

RAILROAD COMPANIES — EJECTION OF PASSENGER — DEMANDING
SECOND FARE.

A railway passenger who, having in his possession evidence of
the fact that he has once paid his fare ( *e. g.*, a mileage book
from which the proper mileage has been regularly detached),
willfully neglects to produce the same upon his fare's being
again demanded by the conductor in apparent good faith, can-
not recover for his ejection from the train in consequence of
his refusal to comply with such demand.

Error to Antrim; Corbett, J.  Submitted December 5,
1895.  Decided December 24, 1895.

Case by Clark C. White against the Grand Rapids & Indiana Railroad Company for the wrongful ejection of plaintiff from one of defendant's trains. From a judgment for plaintiff, defendant brings error. Reversed.

*T. J. O'Brien* and *James H. Campbell*, for appellant.

*W. S. Mesick* (*Fitch R. Williams*, of counsel), for appellee.

Long, J. Plaintiff was a passenger on defendant's road. He took passage at Manton about 5 o'clock in the afternoon of May 6, 1893, intending to go to Mancelona. He had in his possession a mileage book marked "G. R. & I.," and numbered 3,862. It was a 1,000-mile book, and had been used up to 828 miles. The conductor, one John Banks, came through the train soon after leaving Manton, and took from plaintiff's mileage book numbers to 868, being the number of miles from Manton to Mancelona. This strip was indorsed by the plaintiff's name. The train stopped at Kalkaska 20 minutes for supper. The plaintiff alighted, and, before the train started, reentered the car, taking another seat from the one in which he had been sitting at the time the conductor took his mileage. What took place as the conductor came into the car after leaving Kalkaska is stated by the plaintiff as follows:

"Mr. Banks came into the car, and demanded my fare, to which I replied that I had paid my fare. He asked me where to, and I told him, I says, 'Now, Mr. Banks, you ought to know where I paid my fare to. It is your business to know.' And he says, 'You either pay your fare or get off.' I replied that I would not get off until I was put off. He says, 'Oh, you want me to put you off, eh?' He made a grab for the bell rope. He says, 'Pay your fare or get off.' He made a grab for me, and dragged me out into the aisle. He just started with me, and shoved me towards the door. I turned around, and said I had a basket which I wanted to get. He says, 'I will get your basket for you,' and gave me a shove towards the door;

and he followed me up, and out onto the platform, and I got off.

" Q.  Did he make you get off the platform?

" A.  He did.

" Q.  Onto the ground?

" A.  Yes, sir.

" Q.  Did you get your basket afterwards?

" A.  Some one threw my basket out.  I don't know who it was."

On his cross-examination, plaintiff testified further:

" After leaving Manton at a short distance, Banks came through.  I gave him my mileage book, and he tore off my fare to Mancelona.  I had no conversation with him at that time.  I was then sitting in the smoking car.  At Kalkaska I got off the train.   *   *   *   When I returned to the train it must have been between 6 and 7 o'clock.   *   *   *   I got back into the same car.   *   *   *   I did not occupy the same seat.  I changed my seat."

The witness then detailed the conversation between the conductor and himself, and was asked:

"Q.  Did you explain to him that he had regularly taken up your mileage?

" A.  I did not.

" Q.  That you had your mileage in your book?

" A.  I did not.

" Q.  You made no explanation of that kind to him?

" A.  No, sir.

" Q.  You didn't say to him, ' Mr. Banks, you took my mileage when I got on at Manton for Mancelona, and I have my mileage book in my pocket to show that?'

" A.  I did not.

" Q.  You took no occasion, then, to try to explain to Mr. Banks how or in what manner you had paid your fare?

" A.  No, sir.

" Q.  You simply stated to him that you had paid your fare, and that he ought to know to what place you had paid it?

" A.  That is right."

He was asked further:

"*Q.* Why didn't you explain to Mr. Banks at the time the manner in which you had paid your fare?

"*A.* Because he didn't give me any chance to explain.

"*Q.* You shook your hand at him, and said, ' Mr. Banks, you ought to know where I paid my fare to?'

"*A.* Yes, sir.

"*Q.* 'It is your business to know?'

"*A.* Yes, sir.

"*Q.* Would it have been any greater exertion for you to have said, ' Mr. Banks, I have my mileage, which will show where I paid my fare to?'

"*A.* I don't know as it would.

"*Q.* Would there have been any more excitement about it?

"*A.* I don't know that there would.     *     *     *

"*Q.* During the time he was stopping the train, after he pulled the bell rope, did you try to explain to Banks again any mistake there was in the matter?

"*A.* I did not.

"*Q.* You didn't take any occasion to advise him that he was making a mistake,—that he had already collected your fare?

"*A.* I didn't say anything to him.     *     *     *

"*Q.* When you got out on the platform, or down on the ground, did you have anything further to say?

"*A.* Yes; I says, ' I'll fix you for this.'     *     *     *

"*Q.* But you had it in your mind then and there, as Banks was putting you off the train, that you were going to fix him?

"*A.* Yes, sir.

"*Q.* That was in your mind. You weren't so confused over it but what you could remember that?

"*A.* No."

The plaintiff further testified that the affair happened on Saturday evening, and that on the following Monday he consulted a lawyer in regard to bringing a suit against the railroad company. He testified further upon his cross-examination:

"*Q.* There was no difficulty in your taking that out of your pocket and showing it to Banks, if you had seen fit to do so?

"*A.* No, sir.

"*Q.* But you didn't see fit to do so?

"*A.* No, sir.

"*Q.* You simply said, 'Now, Mr. Banks, you know where I paid my fare to?'

"*A.* That is what I said.

"*Q.* 'It is your business to know?'

"*A.* That is what I said, exactly.

"*Q.* You were somewhat mad about it at that time?

"*A.* I was not; no, sir.

"*Q.* Then how did you happen to shake your hand at him, and tell him these things?

"*A.* To emphasize it.

"*Q.* Did you say, 'Mr. Banks, I got on at Manton, and you took my fare to Mancelona?'

"*A.* I did not.

"*Q.* You had changed your position in the car, you say?

"*A.* I had. I did not tell him who I was.

"*Q.* You simply said to him it was his business to do so, and to know certain things?

"*A.* That is all I said to him.  *  *  *

"*Q.* Now, there is no difficulty by taking that mileage book and that mileage, and identifying the fact that the one was torn off from the other, is there?

"*A.* No, sir; I should not think so.

"*Q.* Then there would have been no difficulty, by your producing your mileage book and comparing it with the mileage that Banks had, of establishing the fact that you had already paid your fare?

"*A.* No, sir.  *  *  *

"*Q.* You had had some trouble with Banks previous to this?

"*A.* I had.

"*Q.* And Banks told you then that he understood his business?

"*A.* He did.

"*Q.* And you remembered it that night?

"*A.* Yes, sir.  *  *  *

"*Q.* And you had that in your mind?

"*A.* I did.

"*Q.* And, when you repeated that language, it was because he had used the same language to you, didn't you?

"*A.* That is it, exactly."

The conductor testified that, after plaintiff was out on the ground, he recognized him, and invited him to step back on the train again, which the plaintiff refused to do; that this was the first time he recognized him, and the first recollection he had of taking his mileage. The plaintiff does not dispute but that the conductor invited him to re-enter the car, but says he was unable to get upon the car, by reason of his weakened condition from ill-health, though he makes no claim that he called the conductor or any other person to assist him in getting upon the car, or that he would have re-entered the car, had he been assisted. The jury returned a verdict in favor of the plaintiff for $1,000 damages.

We think, under the plaintiff's own testimony, the court should have directed the verdict in favor of the defendant. In *Lucas* v. *Railroad Co.*, 98 Mich. 1, it was said:

" After the surrender of his ticket, plaintiff had left his seat in the smoking car, and taken a seat in another car. If plaintiff received a check from the conductor, and, when his fare was demanded, did not produce the check, and, when requested, refused to go into the other car for identification, he could not recover."

In the present case, according to the plaintiff's own testimony, he had the evidence in his own possession which he knew at the time would have convinced the conductor that he had once paid his fare through to Mancelona. He purports on his direct as well as on cross examination to give all the conversation he had with the conductor. He did not give the conductor his name, how he had paid his fare, or when he had paid it; nor did he offer in any manner to explain to the conductor why he refused to pay again, except that he had paid, and the conductor ought to know his business. He admits that he had in mind some former occasion when the conductor had used that language to him, and that he had in mind that he would " fix " him. The conductor seems to have recognized him after he was off, and invited him to get on

again, but this he refused. There is no excuse whatever offered for such conduct. When he surrendered his mileage, he had the right to a check showing the point to which he had paid. This he did not call for, and it is evident that the conductor was misled by the change of seat. It appears conclusively that it was the plaintiff's own fault that he was put off, and the conclusion is also inevitable that he permitted himself to be put off for the purpose of bringing an action against the company for damages. It needs no citation of authority to show that this action cannot be maintained.

The judgment must be reversed, and a new trial granted.

McGRATH, C. J., GRANT and HOOKER, JJ., concurred. MONTGOMERY, J., did not sit.