PETTENGILL v BOOTH NEWSPAPERS, INC.

Docket No. 77-3962. Submitted December 13, 1978, at Lansing.—
Decided February 20, 1979. Leave to appeal applied for.

An unknown employee of defendant, Booth Newspapers, Inc.,
caused an item libelous to plaintiff, Robert A. Pettengill, to be
published in one of defendant's newspapers. Plaintiff sued
defendant for libel, asking for such actual and exemplary
damages as were deemed just and alleging *out-of-pocket* medi-
cal expenses of $265. The Genesee Circuit Court, Ollie B.
Bivins, J., granted judgment in favor of plaintiff on his out-of-
pocket damages and dismissed plaintiff's claim for exemplary
damages. Plaintiff appeals. *Held:*

Damages for injury to reputation, mental suffering, embar-
rassment and humiliation are compensatory in Michigan and
are recoverable in a suit against a newspaper alleging negli-
gent failure to proofread the paper resulting in publication of
libelous matter causing the injuries; failure to list these dam-
ages as actual damages and asking only for such actual and
exemplary damages as are found to be just and reasonable is
not fatal to recovery therefor.

Reversed and remanded.

J. H. GILLIS, J., dissented. He would hold that plaintiff's
theory of recovery was *respondeat superior* and that exemplary
damages are recoverable from an employer for the tortious acts

REFERENCES FOR POINTS IN HEADNOTES

[1] 22 Am Jur 2d, Damages §§ 236-242.
    50 Am Jur 2d, Libel and Slander §§ 351, 352.
    Power of equity court to award exemplary or primitive damages. 48
    ALR2d 947.
    Actual damages as a necessary predicate of punitive or exemplary
    damages. 17 ALR2d 527.
[2] 22 Am Jur 2d, Damages §§ 257-259.
    50 Am Jur 2d, Libel and Slander §§ 327, 328, 354.
    Liability of insurance company for libel or slander by its agents or
    employees. 55 ALR2d 828.
[3] 50 Am Jur 2d, Libel and Slander §§ 353, 354.
    Liability of insurance company for libel or slander by its agents or
    employees. 53 ALR2d 828.

of an employee only where there was wilful or malicious conduct on the part of the employer, and such conduct on the part of an employee cannot be imputed to the employer. He would affirm.

OPINION OF THE COURT

1. LIBEL AND SLANDER — DAMAGES — EXEMPLARY DAMAGES — COMPENSATORY NATURE OF CERTAIN DAMAGES.

Damages for injury to reputation, mental suffering, embarrassment and humiliation are compensatory in Michigan and are recoverable in a suit against a newspaper alleging negligent failure to proofread the paper resulting in publication of libelous matter causing the injuries; failure to list these damages as actual damages and asking only for such actual and exemplary damages as are found to be just and reasonable is not fatal to recovery therefor.

DISSENT BY J. H. GILLIS, J.

2. TORTS — MASTER AND SERVANT — DAMAGES — EXEMPLARY DAMAGES — IMPUTED CONDUCT.

*Exemplary damages are recoverable from an employer for the tortious acts of an employee only where there was wilful or malicious conduct on the part of the employer, and such conduct on the part of an employee cannot be imputed to the employer.*

3. LIBEL AND SLANDER — WILFUL OR MALICIOUS PUBLICATION.

*Wilful or malicious publication of a libel is possible only where the defamatory statement is disseminated with knowledge of its falsity or with reckless disregard for the truth.*

*Barkey & Barkey, P.C.,* for plaintiff.

*Bodman, Longley & Dahling* (by *Kenneth R. Lango* and *Andrew J. Broder),* for defendant.

Before: R. B. BURNS, P.J., and J. H. GILLIS and V. J. BRENNAN, JJ.

R. B. BURNS, P.J. Plaintiff instituted a libel action against defendant and one John Doe, who was never served, asking for actual and exemplary

damages that he allegedly suffered when an item inserted in the classified advertisement section of the Flint Journal, one of defendant's publications, referred to him by name in a scurrilous and insulting manner. It is undisputed that the item could only have been inserted by one of the employees in the Journal's composing department, but defendant's investigation was unable to discover the person responsible.

Plaintiff claims that John Doe acted in a wilful, intentional and malicious manner and that defendant Booth Newspapers, Inc. negligently permitted the publication of the material.

During the pendency of the action, defendant filed two motions for summary judgment, each of which was partially granted. These rulings prevented plaintiff from recovering exemplary damages for the defamatory act of defendant's unknown employee, but allowed plaintiff's claim for out-of-pocket damages of $265.

Plaintiff appeals the court ruling denying exemplary damages and we reverse.

Both parties rely on *Gertz v Robert Welch, Inc*, 418 US 323; 94 S Ct 2997; 41 L Ed 2d 789 (1974). The Supreme Court declined to extend the rule stated in *New York Times Co v Sullivan*, 376 US 254; 84 S Ct 710; 11 L Ed 2d 686 (1964), which required public officials to prove that the defamatory falsehood was made with actual malice before a party could recover for such a statement. *Gertz* held that, when a private person was involved, as long as liability without fault was not imposed, states may define their own standards for compensation for actual injury. However, a state may not permit recovery for punitive damages unless the plaintiff proves knowledge of the falsity or reckless disregard for the truth. The Court stated:

"We need not define 'actual injury,' as trial courts have wide experience in framing appropriate jury instructions in tort actions. Suffice it to say that actual injury is not limited to out-of-pocket loss. Indeed, the more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering." 418 US 323, 349-350.

Prior to the *New York Times* case, *supra,* our Supreme Court in *Long v Tribune Printing Co,* 107 Mich 207, 215-216; 65 NW 108, 111 (1895) stated:

"Damages for injury to feelings, shame, mortification, mental anxiety, insulted honor, and indignation have always, in this State at least, been regarded as actual damages, and not as exemplary, punitory, or vindictive damages. *Scripps v. Reilly,* 38 Mich 10. One who has been defamed is entitled to compensation in damages to the extent of his injury, and only to that extent. Confusion arises from the use of terms in this class of cases, and it would be well if the terms 'exemplary damages,' 'punitory damages,' and 'vindictive damages' were omitted from the judicial vocabulary, in this class of cases, at least. The term 'malice,' in the statement that malice is presumed from the publication of libelous matter, is liable to be misunderstood. Malice, in its ordinary acceptance, means ill will, but in its legal sense it means a wrongful act done voluntarily, without just cause or excuse; and in the use of the term this distinction should be pointed out. The sting of an injury sustained by reason of an act wilfully, recklessly, or negligently done is much greater than if the result of accident or mistake. A publication of defamatory matter, made when the means of ascertaining the truth are easily accessible, and in the absence of extenuating circumstances, or those which tend to excuse the wrong, always aggravates the injury. And in my own view, the very accessibility of the facts tending to show the falsity

of the publication gives added force to the accusation. But, however this may be, if it be true that a publisher is liable for the damages actually occasioned, that the injury to feelings is a proper element of damage, and that the sense of injury may be aggravated by the circumstances under which the libel is published, the injury to feelings is not diminished by the fact that the fault or recklessness or negligence is that of a reporter, and not that of the manager. Those circumstances which are calculated to reduce the injury are always allowed to be shown to limit the recovery."

In defendant's motion for summary judgment and affidavit it excuses the publication on the basis that the procedure for processing classified advertisements is highly automated and that the libelous matter was inserted by an unknown employee. Defendant did not answer plaintiff's complaint that defendant negligently failed to proofread the newspaper.

We do not think that defendant can hide behind the theory that a "phantom writer" is responsible for its negligence.

In the present case plaintiff alleged that he suffered injury to his reputation, mental suffering, embarrassment and humiliation. He asked for both actual and exemplary damages found to be just and equitable.

His specification of damages listed psychiatric care, $265, and exemplary damage, $499,735. As stated in the *Long* case, *supra,* damages for injury to reputation, mental suffering, embarrassment and humiliation should have been listed under actual damages. However, defendant was not misled and the trial judge by proper instructions can protect defendant from "punishment" or "punitive" damages.

Reversed and remanded for trial. Costs to plaintiff.

V. J. BRENNAN, J., concurred.

J. H. GILLIS, J. *(dissenting)*. Plaintiff filed this libel action against defendant, seeking judgment for actual and exemplary damages that he allegedly suffered when an item inserted in the classified advertising section of the July 21, 1974, Flint Journal, one of defendant's publications, referred to him by name in a scurrilous and insulting manner. It is undisputed that the item could only have been inserted by one of the employees in the Journal's composing department, but defendant's subsequent investigation was unable to identify the person responsible. During the pendency of the action, defendant filed two motions for summary judgment, each of which was partially granted by the trial court. These rulings blocked plaintiff's efforts to recover exemplary damages from defendant and to hold defendant liable for the defamatory act of its unknown employee under the principle of *respondeat superior,* but left intact plaintiff's claim for $265 in out-of-pocket actual damages. That claim was settled without trial. Plaintiff now appeals from the trial court's grant of partial summary judgment, placing particular emphasis upon its ruling with respect to exemplary damages.

The parties have devoted much attention to the rule laid down in *Gertz v Robert Welch, Inc,* 418 US 323; 94 S Ct 2997; 41 L Ed 2d 789 (1974). In that case, the United States Supreme Court held that "the States may not permit recovery of presumed or punitive damages, at least when liability is not based on a showing of knowledge of falsity or reckless disregard for the truth". 418 US 323,

349. Because plaintiff's complaint merely accused defendant of negligently publishing the defamatory item, defendant asserts that the *Gertz* rule limits plaintiff to recovery of actual damages, and that the trial court correctly found that exemplary damages were not permitted. Plaintiff claims that while *Gertz* barred "punitive" damages, the purpose of exemplary damages under Michigan law is compensatory. I agree with plaintiff's characterization of exemplary damages. However, I would affirm the trial court's decision because the plaintiff has simply failed to allege a sufficient basis for awarding exemplary damages under Michigan law.

As was said in *Ray v Detroit,* 67 Mich App 702, 704, 705; 242 NW2d 494 (1976),

"[I]n Michigan only exemplary damages which are compensatory in nature are allowable. They are recoverable for injury to feelings and for the sense of indignity and humiliation resulting from injury maliciously and wantonly inflicted.

\* \* \*

"They are recoverable only for injury *actually* sustained by a party although that injury is to the feelings rather than physical in nature." (Emphasis in original.)

Exemplary damages for emotional injury have been allowed in libel actions where the injury was "maliciously and wantonly inflicted". The cases have employed a variety of adverbs and adjectives in setting out the standard, but the prevailing idea is that defendant's conduct must somehow have been reprehensible or egregious. While a few cases, *e.g., Long v Tribune Printing Co,* 107 Mich 207, 215; 65 NW 108 (1895), and *Scripps v Reilly,* 38 Mich 10, 23-24 (1878), included negligence as a basis for allowing exemplary damages, it appears that those references contemplated only gross neg-

ligence. In my judgment, the modern approach
follows the general rule stated at 9 Michigan Law
& Practice, Damages, § 92, p 89:

"Exemplary damages may be awarded where the
elements of fraud and malice or wanton and reckless
disregard of a person's rights are involved, or where the
act complained of arises from willful or malicious con-
duct." (Footnotes omitted.)

While plaintiff's complaint alleged that the un-
known employee who had caused the defamatory
item to be published had acted "wilfully, intention-
ally [and] maliciously" for the purposes of exposing
plaintiff to public contempt and ridicule and injur-
ing his reputation, plaintiff claimed only that de-
fendant had "negligently permitted the publica-
tion of this statement" or had suffered it to be
published without legal justification or excuse.
Defendant's second motion for summary judgment
specifically called this discrepancy to the trial
court's attention. Instead of amending his com-
plaint, plaintiff filed a brief in opposition to the
motion. Indeed, plaintiff could hardly have alleged
in good faith that defendant published the defama-
tory statement wilfully or maliciously, for there
was no indication that the Journal's supervisory or
editorial personnel had any inkling that the item
would be published or even that it existed.

In granting summary judgment against plain-
tiff's claim for exemplary damages, the trial judge
termed them "punitive damages" which were bar-
red by the *Gertz* rule. I disagree with his reason-
ing but affirm his conclusion. Because they serve
to compensate plaintiffs for *actual* injury, rather
than to punish defendants for their conduct, exem-
plary damages, so long as they are not presumed,

are expressly permitted by *Gertz.* As the Court's opinion recognized,

"[A]ctual injury is not limited to out-of-pocket loss. Indeed, the more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering." 418 US 323, 350.

Exemplary damages were unavailable in this case not because they are punitive in nature, but because the facts prevented plaintiff from characterizing defendant's conduct as sufficiently offensive to warrant exemplary damages. In the absence of the necessary allegation of wilful or malicious conduct on the part of the newspaper, summary judgment under GCR 1963, 117.2(1) was appropriate.[1]

Moreover, it is my view that wilful or malicious publication of a libel is possible only where the defamatory statement is disseminated with knowledge of its falsity or reckless disregard for the truth. Thus, I would adopt that constitutional articulation of "actual malice" announced in *New York Times Co v Sullivan,* 376 US 254, 279-280; 84 S Ct 710; 11 L Ed 2d 686 (1964), and carried forward in *Gertz,* as the threshold requirement for liability for exemplary damages in a libel action. Because exemplary damages are compensatory, *Gertz* does not necessitate this conclusion.[2] How-

---

[1] Although summary judgment is not in order if the missing element may be supplied by amendment, the present facts rendered the necessary remedial action impossible.

[2] *Peisner v Detroit Free Press, Inc,* 68 Mich App 360; 242 NW2d 775 (1976), implied in footnote 4, p 372, that *Gertz v Robert Welch, Inc,* 418 US 323; 94 S Ct 2997; 41 L Ed 2d 789 (1974), had precluded punitive damages where publication of the libel was merely negligent. The trial court in this case reached the same conclusion. That statement, while generally correct, overlooks the fact that Michigan's

ever, rephrasing the present criterion in the language of a similar and widely known formula would forestall confusion as to when exemplary damages for libel are appropriate.

Plaintiff attempts to salvage the situation, as well as to resuscitate a theory rejected in the trial court's first ruling, by claiming that the unquestioned malice of the unknown employee responsible for the defamatory item can be imputed to defendant to hold defendant liable for exemplary damages under the principle of *respondeat superior.* Plaintiff relies upon the rule stated in *Poledna v Bendix Aviation Corp,* 360 Mich 129, 139-140; 103 NW2d 789 (1960), and *Grist v The Upjohn Co,* 368 Mich 578, 583; 118 NW2d 985 (1962):

> "A corporation may be held liable for slander uttered by an agent *while in the discharge of his duty as agent and in relation to the matter about which his duty as agent permits or requires him to act* in the same way and to the same extent as an individual could be held liable for the same slander." (Emphasis supplied.)

No doubt the same rule is equally applicable to libel, but plaintiff has failed to recognize the import of the qualifying language emphasized above. In *Poledna* and *Grist,* the employees whose defamatory statements plaintiffs sought to attribute to the corporate defendants were personnel officers or supervisors who had made unfavorable comments about plaintiffs while evaluating or discharging them, or responding to inquiries from other potential employers about them. Thus, the nexus be-

---

terminology is somewhat paradoxical. In this jurisdiction, punitive damages are synonymous with exemplary damages; however labeled, their purpose is not to punish but "to fully compensate the plaintiffs for the injury suffered by them because of the defendants' actions". 68 Mich App 360, 371.

tween the defamatory statements and the employees' duties was far clearer than the connection presented by these facts.

The gist of the *Poledna-Grist* rule has been more elegantly stated by the Restatement Agency, 2d, § 247, p 544:

> "A master is subject to liability for defamatory statements made by a servant acting within the scope of his employment, or, as to those hearing or reading the statement, within his apparent authority."

Sections 228 through 237 of the Restatement 2d delineate the boundaries of the concept of scope of employment. Section 228 states the overall scheme:

> "(1) Conduct of a servant is within the scope of employment if, but only if:
> "(a) it is of the kind he is employed to perform;
> "(b) it occurs substantially within the authorized time and space limits;
> "(c) *it is actuated, at least in part, by a purpose to serve the master,* and
> "(d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.
> "(2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized far beyond the authorized time or space limits, *or too little actuated by a purpose to serve the master.*"

(Emphasis supplied.) Restatement Agency 2d, § 228, p 504.

It is evident that the conduct of the unknown employee who inserted the defamatory item into the Journal's classified section was in no way actuated by a purpose to serve his employer. Indeed, the employee almost certainly foresaw that

his prank would embarrass defendant as well as plaintiff. The anonymous prankster's behavior is aptly described by Restatement Agency, 2d, § 235, Conduct Not for Purpose of Serving Master, Comment (c), p 521:

"The fact that an act is done in an outrageous or abnormal manner has value in indicating that the servant is not actuated by an intent to perform the employer's business. See Comment (b) on § 229 and § 245. In such cases, the facts may indicate that the servant is merely using the opportunity afforded by the circumstances to do the harm."

On the undisputed facts, the employee who arranged the publication of the defamatory item acted beyond the scope of his employment in doing so. Nor could the insertion of such an item be regarded as within his apparent authority. The correct legal standard permits no other conclusion, nor would plaintiff have been able to remedy this deficiency at trial. Again, the trial court's grant of summary judgment was correct. On these facts, plaintiff could recover only for his actual, identifiable damages occasioned by defendant's ordinary negligence.[3] He has already been compensated for those.

For the reasons stated above, I would affirm.

---

[3] I am aware that *Ray v Detroit,* 67 Mich App 702; 242 NW2d 494 (1976), held a municipal corporation liable for exemplary damages awarded for injuries that plaintiff had sustained as the result of the intentional tortious conduct of the corporation's employee. However, the finding that the municipal corporation was liable either decided or assumed that the employee was acting within the scope of his employment when he injured plaintiff; the *Ray* opinion did not discuss the issue although it quoted a passage from *Lucas v Michigan Central R Co,* 98 Mich 1, 5-6; 56 NW 1039 (1893), which recognized that limitation.